| | |
|---|---|
| 168 | 19 |
| 26 SC | ³368 |
| 168 | 19 |
| d 29 SC | ³135 |

</div>

# George A. Port *v.* Huntingdon & Broad Top R. R., Appellant.

*Railroads—Eminent domain—Causeways—Measure of damages—Act of Feb.* 19, 1849, *sec.* 12.

Under the act of Feb. 19, 1849, sec, 12, P. L. 84, providing for the construction of a causeway where a railroad severs a tract of land, the conditions of the ground must be considered as to whether the causeway shall be overhead, under grade, or at grade.

A causeway within the meaning of the act is an internal improvement or arrangement intended to afford the means of getting from one part of the land to the other, and has no reference to road crossings, or to the means of getting off the premises to market or elsewhere.

The measure of damages in such a case is the inconvenience which the landowner has suffered in the enjoyment of his property arising out of the failure to construct a causeway. The injury to the land caused by its being severed, or by the inconvenient shapes of the severed parts, or by excavations or embankments, or by obstruction of access to public or private ways cannot be considered, as such injury is provided for in the assessment of damages for the original taking of the land.

Argued April 22, 1895. Appeal, No. 91, July T., 1894, by defendant, from judgment of C. P. Huntingdon Co., May T., 1892, No. 238, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for appointment of viewers to assess damages for an injury caused by the failure of defendant to construct a causeway. Before FURST, P. J.

At the trial it appeared that the defendant's railroad was located across the land now owned by plaintiff, but then owned by James Hight and J. D. Hight. Viewers were appointed upon petition of the Messrs. Hight in 1855, and damages to the amount of $910 were awarded to the owners. These damages were fully paid by the railroad company. The northern boundary of plaintiff's property is bounded by the towing path of the Pennsylvania canal, now owned by the Pennsylvania Railroad Company. The western boundary is the right of way of the Huntingdon & Broad Top Railroad Company. The southern boundary is the Juniata river, and the eastern, a mill race. The Huntingdon & Broad Top Railroad is located so as to cut off a small section in the northwestern corner of the tract from the main portion of the land. On this corner a small dwelling house is erected.

The court charged in part as follows:

" As we have stated the railroad is located across the northwest corner of this lot, and by a view of the diagram you will notice that such a location of the road, separating a part of the premises from the residue, would naturally produce in the minds of the jury or of any person viewing the premises an impression favorable to damages, because of the separation of the parcels of the land and the fact of the owner or occupant having to cross and recross the railroad in going to and from it.

" In the consideration of the case that you are trying, what ever damages were or are occasioned to this lot by the location of the road there, separating the pieces, cutting off this triangle from the residue of the lot, you are not to consider. The owners of this property were paid for that. Whatever damage was done to this property in the location of the road has been settled for and is not, and cannot be, a claim before this jury. Up to somewhere in the summer of 1891, the owners of this property

were accustomed to go to and from the premises by traveling upon the towing path of the canal and passing under the bridge of the railroad company or between the trestles of the road. In 1891, the Pennsylvania Railroad Company straightened their tracks in this borough; and the result was that they changed the location of their road and occupied premises further south. The Broad Top Railroad Company then began to reconstruct their roadbed, that is, that which before had been a trestlework was filled up by a solid embankment. After these changes by the Pennsylvania Railroad Company, the Huntingdon & Broad Top Railroad Company made a solid roadway for their road, and they had a right to do so, as that was within the corporate powers of the company and for the benefit and safety of the public; and whatever damages the construction of that road caused, are not before this jury to be assessed. But the plaintiff alleges and claims that at that period of time, in 1891, by changing the trestlework into a solid embankment, a necessity arose to build upon these premises a causeway, so that Mr. Port might pass with ease and convenience from one portion of his premises to the other, in the occupation and enjoyment of the land; and he claims that he requested the Broad Top Railroad Company to establish a causeway for him and that they refused; and therefore the damages arise which you are to assess in this case for the failure to build that causeway so as to afford convenience of travel over and across the line of this railroad for the accommodation of the occupant and owner of the premises.

" A causeway according to lexicographers is a way raised above the natural level of the ground by stones, earth, timber, etc., as a dry passage over wet or marshy ground. That was the original idea of a causeway. Applying it to railroad construction under the act of assembly to which we will presently call your attention, it would seem to be, and we think is, a means, a way, graded so as to make it convenient to cross the track of the road. Whether it be at, above or under grade, we will refer to again hereafter. But it is a means of approach, constructed in whatever suitable manner it may be required, so as to make a passage across the railroad from one side to the other; and whether it be called a causeway or an archway, or a bridge or any other artificial term, it comes down to a passageway across the line of the track. It is that thing

that this company refused to do, according to the allegations of the plaintiff ; and for the failure to do it damages are sought here. . . .

" [This first question, as we have already said, for you to determine is : Have this company refused to build a causeway ? You will have no trouble in coming to the conclusion that the company have failed to build a causeway ; and that failure, under the evidence, we feel perfectly safe in saying to you can be regarded by the jury as a refusal to build a causeway.] [15]

" The second question then is whether there was a necessity to build a causeway. You have heard the evidence on that subject. [If you come to the conclusion that there was a necessity to build this causeway, the next important question for you to determine is : Was it practicable to build one— could one be built on the premises of Mr. Port ?] [14] In this connection, we say to you Mr. Port has no right to require the railroad company to build him a causeway on any other person's land than his own. If he wants exit to other people's land, that he must obtain in a different way. If you find that it was necessary and that it was practicable, then the last question for you to determine is : What damages has Mr. Port sustained by the failure of the company to build that causeway ?

" Damages are an allowance in law for an injury inflicted by one person upon another or upon his property. Damages may be either compensatory or punitive. Compensatory damages are the actual damages that a man sustains. Punitive damages are damages that are in their nature of a vindictive character, that is 'smart money' to punish a man for doing or not doing a particular thing. The character of the damages involved in this case is that of compensatory damages. If Mr. Port is entitled to damages, they are simply such damages as are given under the act of assembly ; and I, therefore, reread that portion of the act in connection with what I have said to you :

" ' The said company shall be liable to pay any person aggrieved thereby all damages sustained by such person in consequence of such neglect or refusal.'

" In order to ascertain the damages, you must take into consideration the situation of the property, the enjoyment and use

to the occupant of the property and the relative value of the one section and the other. A causeway is in the nature of an internal improvement within the premises themselves. What damages did Mr. Port sustain by the failure of the company to build that causeway? He alleges and has adduced testimony to show that he is cut off from that triangle, that he cannot use the triangle in connection with the residue of his property; and that is the gravamen or gist of his action and must be under the law, because his damages do not arise from the location of the road.

If the Broad Top Railroad Company had located its road along the northern line of Mr. Port's property and had built an embankment there ten feet high, whatever damages Mr. Port or the owner of the property would have sustained by reason of that embankment, would not have been damages resulting from the failure to build a causeway; but they would have been damages arising from the construction of the road in that manner upon his premises, excluding him from the public; and for such a construction his damages would be assessed under the 11th section of the act, which provides for the taking of property for public use. Damages for the failure to build a causeway are in the nature of internal damages to the property, rendering its use and occupation inconvenient. Therefore, you must take into consideration the relation that this triangle, cut off from the other part of the lot, bears to the other part of the lot, with the two used together. Is it inconvenience to Port to be deprived of the use of the triangle in connection with the residue of the property? If he did not so use it, if it was leased or in the possession of another so that he was not using it as part and parcel of his slaughtering establishment, then of course it would most materially affect the amount of damages, because, if he is not damaged in its use and enjoyment or in the convenient use and enjoyment, it goes to the very basis of the claim for damages. Because any witness may swear that the damages are $5,000 or $500 or any other sum, you are not to allow that sum. You are not to allow damages based upon that theory. It is the real, actual inconvenience to the owner of the property that you are to consider. How much in dollars and cents does that inconvenience amount to? You do not estimate it by the profits of the business, be-

cause you cannot go into the question of whether there will be a profit or a loss upon a man's business. It is the inconvenience or, in a certain sense, the burden that is cast upon the property by the failure to build a causeway there to connect the two parts together, so as to conveniently enjoy them as they might be enjoyed with a causeway there. That is the real basis of the plaintiff's claim in this case, and it is with reference to that that you must ascertain the damages ; and so that you may understand the trial of this case, a great many propositions as to damages were submitted and rejected by the court, because none of them, in the mind of the court, brought the evidence to the real question that underlies this case. You are not to consider, as the measure of damages in this case, the fact that Mr. Port did not have free access to the town, going off his premises. That would enter into the question of damages arising from the construction or location of the road, and they have been assessed and paid ; but it is the internal enjoyment and occupation of the premises that is involved in the failure to build a causeway that you notice. Under the act the purpose is stated to be to enable the occupant or occupants of the land to cross or pass over the same with wagons, carts and implements of husbandry. This act would seem primarily to apply to the same plantation that is used in agriculture, so that the owner of the farm may pass from one side of the farm to the other, across the line of the road, with his carts, wagons and implements of husbandry ; and wherever he is impeded by the locations of the road so that he cannot pass from the one to the other without a causeway, it is the duty of the railroad company to furnish a causeway ; and, if they fail to do it, they are to pay the owner whatever damages he sustains by that inconvenience."

Defendant's points are among others as follows :

" 9. The railroad company had no power and was under no obligation to go through the lands of Horace Dunn or any other person to make Mr. Port a road ; and if it was impracticable to make him a causeway on his own land, or he declined to have such a causeway made on his own land, then he cannot recover in this proceeding. *Answer :* This point is predicated upon the testimony of Mr. Port himself. We have reserved the question involved in this point for further consid-

eration and as a reserved point; and, in connection with this reservation, we have also reserved the question whether there is any evidence upon which the plaintiff is entitled to recover. That we reserve for future consideration."

"13. A railroad company is not obliged to provide the owner or occupant of land through which its road passes with a way under its road to enable him to pass from one part of his land to another. *Answer:* We reserve for further consideration, in connection with our answer to the ninth point, the question whether the railroad company would be bound to make a causeway under the line of their roadbed."

Verdict for plaintiff for $425. The court subsequently entered judgment for the plaintiff on the reserved points. FURST, P. J., filing the following opinion:

" The verdict in this case is so reasonable that it seems to us to be a very fair adjustment of the case, and it ought not to be disturbed except for manifest error.

" Upon the trial of this case we reserved two questions of law, the first in answer to plaintiff's second point, and the second in answer to the same point, and to defendant's ninth and thirteenth points. We also reserved the question whether under the evidence the plaintiff was entitled to recover.

" Plaintiff's second point and defendant's thirteenth point relate solely to the question whether the 12th section of the railroad act of 1849 contemplates a causeway under the railroad. We affirmed plaintiff's point, reserving the question as stated for further consideration.

" We are of opinion that the character of the causeway must be determined by the location of the railroad where the necessity requires the causeway to be constructed. If the railroad is built at grade, a causeway can be built at grade. If the railroad is elevated as by a heavy fill, it is clear that the cheapest and best causeway would be under the railroad; if the railroad is depressed then an overhead crossing would be proper, so that the conditions of the ground must be considered as to whether the causeway shall be overhead, under, or at grade.

" The ninth point we affirm. The causeway is intended to connect the several parts of the tract, so that access may be had from the one part to the other on plaintiff's own land, and not elsewhere. The question whether it was practicable to build

one so as to connect the triangle with the main lot was left to the jury.  The jury found that it was.

" The last question is predicated upon the testimony of the plaintiff alone.  Whether under his testimony a recovery can be had, etc.  This is the question upon which our mind is not clear.

" If what plaintiff testified on the stand has to be considered as ' fact,' and not ' opinion,' we would be compelled to hold that he, by his own testimony, defeats his case.  But upon a careful reading of his testimony, we are inclined to the view that the greater part of his evidence on this branch of the case is matter of opinion only, influenced by the fact that plaintiff's preference was to have a causeway over the lands of defendant rather than over his own.  The character of the petition for viewers rather leaves such impression on the mind.

" We however differed from counsel upon this view of the law, and we held on the trial and still hold that the causeway is intended to be rather an internal improvement or arrangement, so as to afford the means of getting from the one part of the land to the other, and it does not comprehend a means of getting off the premises to market, etc.

" While the plaintiff did express his opinion strongly on the subject of location of the causeway, defendant called a witness, John L. Isenberg, who testified that it was practicable to construct the causeway on the premises.  That at the abutment a passageway could be made under the roadbed.

" When we remember that this portion of plaintiff's lot is spanned by an iron bridge, from six feet high and upwards, and that there are open spaces between the bents, it is not difficult to find that an under way can be made so as to cross the road.  We are satisfied that we directed the jury properly upon the subject of damages, and the difference is the damages under the 11th and 12th sections of the act.

" The fixed rule for the assessment of damages incident to the taking of land for the location and construction of a railroad, under the right of eminent domain, vested in the corporation, is well defined in the 11th section of the act of 1849, general railroad law, and in many decisions of the Supreme Court.

" The rule as announced in Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411, has been followed down to the latest

case. That rule is: The value of the property as a whole ′ immediately before the injury, or the construction of the railroad; its value immediately after the construction as affected by it. The difference, if any, is the true measure of damages.

"Any burden cast upon the land by the construction of the railroad, which detracts from its value, is to be considered by the jury in estimating the damages. The way in which the railroad cuts the tract or lot as diagonally, by a curve or otherwise; the inconvenient shape in which the remaining part is left, the depth of excavations, or height of embankments; the obstruction or entire interruption of access to public or private ways; the division of the tract or lot into different parts, so that persons or cattle cannot pass from one to the other; or, if at all, only with greater or less difficulty and danger, etc., are all proper subjects, matters and things to be considered by the jury of view in assessing the damages, and these are to be considered once for all, under the 11th section of the act, and having been so considered, they are not the subject of consideration again in the present proceeding: Pierce on Railroads, pages 210, 211; Schuylkill Navigation Co. v. Farr, 4 W. & S. 362; Searle v. Lackawanna & Bloomsburg R. R. Co., 33 Pa. 57; Patton v. N. C. R. R., 33 Pa. 426; Watson v. Pittsburg & C. R. Co., 37 Pa. 469; East Penn. R. Co. v. Hiester, 40 Pa. 53; Brown v. Corey, 43 Pa. 495; East Penn. R. Co. v. Hottenstine, 47 Pa. 28; Harvey v. Lackawanna & Bloomsburg R. R. Co., 47 Pa. 428; Hornstein v. Atlantic & G. W. R. Co., 51 Pa. 87; Western Penn. R. R. v. Hill, 56 Pa. 460; Wilmington & Reading R. R. Co. v. Stauffer, 60 Pa. 374; East Brandywine & Waynesburg R. R. Co. v. Ranck, 78 Pa. 454; Penn. & N. Y. R. R. Co. v. Bunnell, 81 Pa. 414; Hoffer v. Penn. Canal Co., 87 Pa. 221; Pittsburg etc. R. R. Co. v. Bentley, 88 Pa. 178.

In East Penn. Railroad v. Hiester, 40 Pa. 53, supra, the third assignment of error was to the court's answer to defendant's second point. The answer allowed the jury to consider the damage incident to the taking of the land, arising from inconvenience in crossing the road and interference with crossings already established. The Supreme Court held this was correct, saying, in this particular, damages should not be included for making the crossings themselves, for they are to be made by the company, but for damages by reason of their not having

been constructed.    As it was the duty of the company to con-
struct them in the first instance, without any demand, damage
for not so doing commensurate with the injury is an incident
of the taking, and may be allowed.    It is plain that all such
damages are to be assessed as incident to the original taking,
and hence are presumed to be included in the assessment made
in 1855.

"Nevertheless the company under the 12th section of the
act is required to make one causeway for each property through
which the railroad passes if necessary and if demanded, and for
failure to do so the company would still be liable in the man-
ner pointed out in the general law in the 12th section.

"Such causeway as we understand the law means a crossing
so as to afford access to the lands separated by the railroad.    It
has no reference to the road crossings, as they are provided for
independent of this requirement.    If the evidence shows no
necessity for the causeway for such purpose, and if it further
shows by the testimony of the landowner himself, that such
causeway cannot be built over or under the railroad, then the
company cannot be considered in default for not so doing, as
the law never requires the doing of a vain or impossible thing ;
and if it further appears by the plaintiff's own testimony, uncon-
tradicted by any testimony, that the causeway sought in the
proceeding is not to get to such part of his land, but that he
virtually seeks a road to get from his land over lands belong-
ing to others, and thence over the line of the railroad into the
streets of the town.    Since in default of such road or causeway,
as termed by plaintiff, damages are to be assessed against the
company, then it is apparent to our mind that plaintiff is seek-
ing a second assessment of damages, which in this case were
assessed in 1855 and duly paid.    Such damages are in our
opinion incident to the original taking and cannot be again
assessed.    Neither do such damages belong to this plaintiff
whose title to the lot did not originate until twenty years or
more after the construction of the railroad.    The question of
the necessity of the causeway, etc., was carefully submitted to
the jury and their attention was called to the true rule of dam-
ages, so that there should be no double assessment.    That the
measure of damages was the inconvenience plaintiff suffered in
the enjoyment of his premises arising out of a failure to con-

struct a causeway, the amount of the verdict indicates to our mind that the jury so considered the case and allowed for such damages only.

" If, however, we are wrong in our views of plaintiff's testimony, the case is in proper shape for the Supreme Court to so declare, and thereupon to enter a different judgment upon the reserved questions.

" In order to end litigation and to have the case speedily reviewed by the Supreme Court we have arrived at the above conclusion without proper time to fully state our views, as we otherwise would have done if we had more time to devote to the case. We, therefore, refuse a new trial, and we direct judgment to be entered upon the verdict in favor of the plaintiff and we seal defendant a bill to this ruling."

Defendant appealed.

*Errors assigned* among others were, (5, 7) in entering judgment for the plaintiff on points reserved, quoting points; (14, 15) portions of charge as above, quoting them.

*Samuel T. Brown*, of *Brown & Brown*, *John M. Bailey* with him, for appellant.—The remedy given by the 12th section of the act of Feb. 19, 1849, P. L. 84, refers to the period of construction, and whether it always does so or not, it clearly does so in this case: Phila. & Reading R. R. v. Reading & Pottsville R. R., 2 Pa. Dist. Rep. 857 ; Ambler's App., 17 W. N. C. 433 ; Campbell's App., 22 W. N. C. 81; East Penna. R. R. v. Hiester, 40 Pa. 53; Del. R. R. v. Burson, 61 Pa. 369; Heise v. Penna. R. R., 62 Pa. 68.

*George B. Orlady*, for appellee.—The viewers in 1855 could only assess damages in view of the taking by the company in accordance with their declared plans as submitted ; they could not speculate upon a possible subsequent alteration : Campbell's App., 22 W. N. C. 81 ; act of February 19, 1849, sec. 12, P. L. 84 ; Dubbs v. P. & R. R., 148 Pa. 66 ; Ill. Cent. R. R. v. Willenborg, 117 Ill. 203 ; Lance's App., 55 Pa. 16 ; Thornton on Railroads, 469.

The damages assessed do not cover cost of crossings or causeways, as it is the statutory duty of the company to construct

and maintain them: Watson v. R. R. 37 Pa. 469; Traut v. N. Y. C. & St. L. R. R., 22 W. N. C. 540; Thornton on Railroads, 413; P. W. & B. R. R. v. Trimble, 4 Wh. 47; Mills on Eminent Domain, 219; Wabash Ry. v. McDougle, 9 Am. St. R. 544; P. V. & C. R. R. v. Rose, 74 Pa. 362; O'Brien v. Phila., 150 Pa. 589; Gilmore v. P. V. & C. Ry., 104 Pa. 275; Jones v. R. R., 151 Pa. 30; Boyd v. Negley, 53 Pa. 387; C. & W. I. R. R. v. Coggswell, 31 Am. Law Reg. 526; Barnes v. M. A. L. Ry., 65 Mich. 251; Carpenter v. E. & A. R. R., 24 N. J. Eq. 250; s. c., 26 N. J. Eq. 168.

PER CURIAM, May 6, 1895:

An examination of this record with special reference to the specifications, discloses no substantial error. The questions involved,—so far as they are material,—have been sufficiently considered and correctly decided by the learned president of the common pleas. It is unnecessary to add anything to what has been said by him in his opinion on the questions of law reserved, etc., and on that opinion the judgment is affirmed.

Judgment affirmed.