# Davis *v.* Wheeling, Pittsburg & Baltimore Railroad Company, Appellant.

*Railroad—Eminent domain—Damages—Release of damages.*

A general release of damages to a railroad company as to land taken for right of way will be construed to embrace every injury to the entire tract necessarily resulting from the construction of the railroad as originally located, and for the lawful exercise of the right of the company to extend its works, within the limits of the right of way to meet the demands of increasing traffic.

*Railroads—Private right of way—Adverse possession against railroad company.*

A landowner is not entitled to recover damages from a railroad company for encroachment upon a private right of way averred to have been acquired by prescription, between trestle supports, alleged to have been decreased from a greater to a less width, where the evidence shows that the owner had the use of the greater width for the period of only fourteen years prior to the action of the railroad company in lessening the width.

Not decided whether a private individual may acquire by adverse possession a private right of way over land included in a railroad company's right of way.

Argued April 19, 1904.    Appeal, No. 46, April T., 1904, by defendant from judgment of C. P. Washington Co., Feb. T., 1903, No. 67, on verdict for plaintiff in case of Robert W. Davis v. Wheeling, Pittsburg & Baltimore Railroad Company.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.    Reversed.

Trespass to recover damages for an alleged encroachment upon a private right of way.    Before TAYLOR, J.

The facts appear by the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $1,100.    Defendant appealed.

*Error assigned* among others was (12) in refusing binding instructions for defendant.

*Norman E. Clark,* for appellant.—A railroad being a public highway, no rights can be acquired against it either by the

public or by individuals by adverse user, no matter how long such use continues or under what circumstances it is claimed: Penna. R. R. Co. v. Freeport Borough, 138 Pa. 91; Northern Pacific Ry. Co. v. Townsend, 190 U. S. 267 (23 Sup. Ct. Repr. 671); Sapp v. Northern Central Ry. Co., 51 Md. 115; East Tenn., etc., R. R. Co. v. West, 10 L. R. A. 855; Heyl v. P. W. & B. R. R. Co., 51 Pa. 469; D. L. & W. R. R. Co. v. Newton Coal Mining Co., 6 Kulp, 21; Stevenson's App., 17 W. N. C. 429.

When the company obtained title to the eight acre strip of ground for right of way purposes it was entitled to the exclusive possession of the same. It could build its tracks over the whole or only over a part. It could raise and maintain any appropriate superstructure upon it and deal with it without limit for railroad uses, as its directors might determine: Pittsburg, Fort Wayne & Chicago Railway Co. v. Peet, 152 Pa. 488; Penn. Schuykill Valley Railroad Co. v. Reading Paper Mills, 30 W. N. C. 148.

When a railroad company condemns land it has a right to regard and make provision for its future as well as its present needs, and non-user of a portion of the land for certain purposes cannot be held to be an abandonment: Pittsburg, Fort Wayne & Chicago Railway Co. v. Peet, 152 Pa. 488; Pittsburg Junction R. R. Company's Appeal, 122 Pa. 511.

A grant of the right of way for a railroad includes all that the company may lawfully and adversely take for use as a way; therefore an agreement by a landowner to sell "the right of way" over his premises for a fixed sum covers all damages of whatsover nature suffered by the landowner, unless the right to recover extra compensation is expressly reserved: N. & W. Branch Ry. Co. v. Swank, 105 Pa. 555; Hoffeditz v. South Penn. Ry. Co., 129 Pa. 264; Updegrove v. Penna. Schuylkill Valley R. R. Co., 132 Pa. 540; Pitts., Ft. Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Penna. Schuylkill Valley R. R. Co. v. Reading Paper Mills, 30 W. N. C. 148; Kemp v. Penna. R. R. Co., 156 Pa. 430.

*L. R. Boyd*, for appellee, cited: Seely v. Alden, 61 Pa. 302; Neff v. Penna. R. R. Co., 202 Pa. 371; McMinn. v. Pittsburg, etc., R. R. Co., 147 Pa. 5.

OPINION BY PORTER, J., October 17, 1904:

The plaintiff brought this action to recover damages for encroachment upon a private right of way, alleged to have been acquired by prescription, leading from his lands over the right of way of the defendant company and between the supports of a trestle work upon which the tracks of the company were located. The statement contained an averment that the fill at the end of the trestle work had slipped and diverted the flow of water from a spring to such an extent as to damage the road-bed of said right of way, and that at one time the slip had extended on to the road, but the evidence upon this branch of the case was not such as would have warranted a finding that the slipping was the fault of the defendant company, nor that the right of way in question had been materially injured. The statement further averred that this slipping had extended onto the lands of the plaintiff, thus constituting a physical intrusion upon his property, but at the conclusion of the presentation of the evidence at the trial the court, upon the motion of the plaintiff, withdrew that element of the case from the consideration of the jury ; and the plaintiff based " his whole claim for recovery here on the encroachment by the defendant company on his roadway leading from the pike to his farm."

The only averment of an encroachment which was supported by any evidence worthy of consideration related to the location of the bents or supports of the trestle work which sustained the tracks over which the defendant company operated the main line of its road. The statement averred that an " encroachment was made upon said road or passageway by said defendant company about the year 1885 when the passageway immediately under the trestle work was made narrower by said company by the insertion of an extra bench or set of upright timbers for the support of the tracks of said defendant company,·so that whereas, previous to that.time two teams could pass with safety immediately under said trestle work, at the present time it is difficult to get one loaded wagon through said opening between the uprights of said trestle work where said roadway or passageway goes through said trestle work." The complaint that the encroachment upon the passageway was " by narrowing same immediately under the trestle work by inserting an additional set of upright timbers," is reiterated in the statement.

The statement averred that the railroad was constructed in the years 1855, 1856 and 1857, by the Hempfield Railroad Company, to the rights of which the defendant company succeeded about the year 1876; which allegations the evidence indicates to be substantially correct. James Spriggs was then the owner of the land upon which the right of way was located, and of the tract which is now the property of the plaintiff. The railroad seems to have been located along one side of the farm, and did not cut it into pieces separated by the tracks. Spriggs died before the construction of the road was completed, and his administrators presented a petition to the orphans' court setting forth that the decedent had previously to his death made a parol contract with the railroad company by which he stipulated to release the company from all claim for damages caused by the construction of the railroad and to convey to said company such quantity of his land as the said company might necessarily appropriate for the construction of their road, in consideration whereof the railroad company had stipulated to pay to said Spriggs the sum of $650; that the railroad company had prosecuted the construction of their road through the farm and had appropriated as much as they adjudged necessary, which by survey had been ascertained to contain $8\frac{16}{100}$ acres, "as shown by the annexed draft and description;" that Spriggs had died without having made a deed in pursuance of the contract, and that the petitioners pray that a citation might issue to the Hempfield Railroad Company to show cause why a decree should not be made for the specific performance of the contract. The railroad company filed an answer admitting the facts, and the court, on May 31, 1855, decreed the specific performance of the contract, and ordered the petitioners to execute and deliver to the respondents a deed of conveyance according to the terms thereof. The deed was made in accordance with the decree, acknowledging the receipt of the consideration, conveying the land, and in accordance with the contract which the court had decreed should be specifically performed, releasing and discharging the said railroad company "from any and all claim for damages caused by the construction of said railroad through the tract of land aforesaid." There is no suggestion in the proceedings of the orphans' court or the deed executed in accordance with the decree of

any reservation of a private right of way over the land conveyed or of any servitude imposed upon it for the benefit of the other part of the farm. The release of damages was general and must be held to have embraced every injury to the entire tract necessarily resulting from the construction of the railroad as originally located, and for the lawful exercise of the right of the company to extend its works, within the limits of the right of way, to meet the demands of increasing traffic: Kemp v. Pennsylvania Railroad Company, 156 Pa. 430; Port v. Huntingdon & Broad Top Railroad Company, 168 Pa. 19.

The plaintiff did not allege in his statement, nor prove that previous to the entry of the railroad upon the land there had been any apparent servitude imposed upon the strip, over which he now claims a private right of way, and we do not have to deal with such pre-existing rights, appurtenant to other lands, in the lands which are the subject of the appropriation, and subsequently recognized and continued by the railroad company, as were considered in Penna. R. R. Co. v. Jones, 50 Pa. 417; Neff v. Penna. R. R. Co., 202 Pa. 371. The statement averred that the private roadway " or passageway above mentioned having been constructed about the year 1856 and having, since that time down to the present, been used by himself and his ancestors as a roadway or passage, from the farm across the railroad company's right of way and on to the national pike, said use having been peaceful and uninterrupted by the defendant railroad company or its predecessors in possession of said railroad property, although said use has been open, adverse, continuous and notorious for the period above mentioned, above forty-six years, therefore said roadway or passageway is by prescription a right of way belonging to the farm as a means of getting from said farm to a public road." The averment is not of a way created by grant or reservation, but by adverse user alone, and that that use originated in 1856. The plaintiff's statement avers that the construction of the railroad was commenced in 1855, and the evidence conclusively establishes that the railroad company appropriated the land and entered upon the construction of its road through this property prior to May 31, 1855, and made compensation to the owners, received a release of damages, and a conveyance of the land in accordance with the decree of the orphans' court upon that

day made.   There was not a scintilla of evidence that any private right of way appurtenant to the lands now owned by the plaintiff had been used over the route now claimed prior to the construction of the railroad.   If the passageway in question is by prescription a right of way appurtenant to plaintiff's farm, the adverse user in which that right is founded began after the land had been acquired by the railroad company for a public purpose, and such use has all the time been adverse to the right of the public in the land.   The railroad company took the land unburdened by any easement for a private right of way, but the plaintiff contends that because, as he asserts, for over twenty-one years the supports of the trestle work were wide apart, and the defendant company did not prevent his driving between them he has now acquired the right to always have the supports of the trestle that far apart, and if the defendant company desires to increase the strength of their trestle so that it may safely carry the heavy engines and trains which its increased traffic requires the company must pay him for the deprivation of his supposed right.

Assuming for the present that a right of way by prescription may be acquired through adverse user by a private individual over lands appropriated to a public use, there can be no doubt that it is incumbent upon the claimant of such a right to show that he has enjoyed it to the extent asserted for twenty-one years.   The evidence in this case establishes the undisputed fact that the bents or supports of the trestle between which the alleged road of the plaintiff passes were placed in their present positions in 1885 and have there remained ever since that time; the plaintiff has not during that period used, either adversely or otherwise, a wider road, and is not therefore entitled to have that period counted as a part of the adverse user upon which he founds his prescriptive right.   If the plaintiff ever acquired the right to have those bents placed at a greater distance apart, it must have been prior to the alleged change in 1885.   What were the conditions prior to 1885?   The defendant company called many witnesses who testified that during the entire period prior to 1885 the bents had been in exactly the same positions which they have occupied since that time, but leaving that out of view for the present let us consider the testimony produced by the plaintiff.   The plaintiff called a number of wit-

nesses who testified that the opening in the trestle through which he drove was made considerably narrower in 1885, some of these witnesses testified that the opening prior to that time had been about twenty-eight feet wide, but only one of those witnesses had ever had occasion to make any measurements which could have given them an exact idea of the width of the opening. The others were simply testifying as to their recollection of a distance which they had never measured and which they had never had occasion to accurately estimate, and this when eighteen years had elapsed after the change had been made. Some of those witnesses said that the space had been wider, others that it had been twice as wide, and a few of them testified that it had been about twenty-eight feet wide, but their testimony made it clear that it was simply a guess at a recollection. The paper-book of the appellee summarizes, not unfairly, the testimony of the principal witnesses for the plaintiff who testified as to the conditions which existed immediately prior to 1885, as follows : The plaintiff testified " that under the trestle work the roadway, prior to the year 1885, was two benches wide or more than twice as wide as it is at the present time." A. S. Eagleson testified that " prior to 1885 the space through under the trestle work was nearly double what it is now, that is the opening ; overhead there was a framework like a truss bridge." Richard Lyle testified that he worked on the trestle in 1885, " at which time the supporting beam, spoken of by the preceding witness was removed and a bent or additional trestle was placed in the middle of the roadway as it exists at the present time." The supporting beam here referred to was a device to support the stringers overhead at the joint midway between the bents or supporting trestles at each side of the alleged roadway, and consisted of a cap sustained by timbers which extended obliquely down from the middle of the opening directly under the horizontal timbers overhead to the feet of the bents at the respective sides. If the fact were as here testified to, the opening under the trestle had, prior to 1885, been two benches wide at the surface of the ground, but above that level the clear opening was diminished by the approach of the supporting braces until they met at the middle of the horizontal timbers overhead, which point seems to have been about seventeen and a half feet from the ground. There was no tes-

timony which would have warranted a finding that any change was made, in 1885, in the horizontal timbers overhead; the joints in the stringers and cords remained in the same position in which they had always been, and the testimony of all the witnesses, on both sides of the case, established as an undisputed fact that the location of those joints determined where the bents or supports must be placed in order to sustain the work overhead. Assuming all the testimony above referred to to be true, it established that, in 1885, the oblique beams which had supported the joint in the overhead work at the middle of the space through which the alleged roadway passed had been taken out and instead thereof a new bent, or perpendicular support, had been placed under the joint and in the middle of the space which had formerly been open. This testimony was in harmony with the averment of plaintiff's statement that " the passageway immediately under the trestle work was made narrower by said company by the insertion of an extra bench or set of upright timbers for the support of the tracks of said defendant company." The erection of this bent, in 1885, diminished by about one half the width of the opening under the trestle. The defendant company had a right to do this, unless the evidence produced by the plaintiff established that he had by adverse user for twenty-one years acquired a right of way of the width of the space which had been open between the bents prior to the change.

The plaintiff called a number of witnesses who testified as to the width of the space between the bents immediately prior to 1885, but only two who gave definite testimony as to the conditions which had existed immediately under the trestle prior to 1871. The testimony of those two witnesses was fatal to plaintiff's right. John Jenkins testified, in 1903, that he had known the farm now owned by the plaintiff between thirty and thirty-five years, and the alleged road for nearly that time. When asked as to the width of the road when he first knew it he replied: " Well, if . . . . I don't know exactly, but I know it was pretty wide; I know they called it twenty-eight feet, but I never measured it or seen it measured; there was a bent in the middle and they went around each side of it sometimes. Q. They went on each side of the bent in the middle? A. Yes, sir." It thus appears that within thirty-five years prior to 1903

there had been a bent at the middle of the space where plaintiff claims his right of way. The testimony of the other witness, to which we will now refer, made clear when that bent was put there and when it was removed. Barney Todd was the one witness called by the plaintiff who, at an early date, had made actual measurements of the distances between the bents of this trestle work and was personally familiar with the details of the original construction. He had assisted in the original construction and in the subsequent repair of the structure, and while the exact dates had not been impressed upon his memory, his recollections of the details of the construction were reasonably clear. His impression was that the original work had been done in 1859 and the subsequent change, hereinafter referred to, in 1873, while the other testimony in the case seems to indicate that the former was in 1857 and the latter in 1871 or 1872; but the exactness of these dates is not for the purposes of this case material. He testified that the road string of the trestle was double; that the cords and stringers, the horizontal timbers in the road string, were composed of timbers of a uniform length, he could not say whether twenty-four or twenty-eight feet, joined together, the joints being broken, the joints in one stringer being midway between the joints in the stringer on the opposite side of the track; that a bent or supporting trestle extending through the structure and under both stringers down to the ground was placed at each joint, and that each timber in the stringers was supported in the middle and at each end by one of these bents; that in work of this character there must be a support at each joint in the stringers, and that as originally constructed the bents under this trestle were either twelve or fourteen feet apart measured from center to center of the upright timbers in each, but he could not be certain whether the distance was twelve or fourteen feet, it was one or the other. The length of the timbers composing the stringers determined the width of the spaces between the bents. He testified positively that there was a trestle, or bent, placed there in the center of the space through which the plaintiff now claims his right of way when the trestle was originally constructed, and that after the original construction of the work there was a driveway on both sides of that center trestle, "making two roads," and that this condition continued until 1873,

when a change was made.   When asked what was done at the time last mentioned, he described the change in this language, viz : " According to my recollection we took the center trestle out and run braces from the two sides, trestles, to a cap in the center of the span."   The testimony of this witness was the only thing in plaintiff's case which tended to show how the conditions which existed immediately prior to 1885 had been brought about, and it reconciled the testimony of Jenkins with that of the other witnesses called by plaintiff in support of his contention.  Todd may possibly have been in error as to the exact time when the change was made, but the testimony of the other witnesses for the plaintiff conclusively shows that it could not have been earlier than 1871.   There was no evidence in the case which would have warranted a finding that any change was made in the trestle between the time of the change described by Todd and 1885, at which time the braces from the sides to the cap in the center of the span were removed and the center trestle or bent was restored to its former position.   Assuming that the first change was made at the earliest date which the evidence would warrant, the plaintiff had only used the ground upon which that center bent stands as a roadway from 1871 to 1885; the user was not for a period of time sufficiently long to establish title to a right of way by prescription.   The defendant company had title to the land and the right to return to the original manner of supporting their track.   The point submitted by the defendant requesting binding instructions ought to have been affirmed, and the twelfth specification of error is sustained.

The lands over which the plaintiff claims a right of way are and have been for many years appropriated to a public use. The railroad company lawfully acquired the right of way and has constructed upon it a railroad which has been operated for over forty years.   The company was under its charter invested with the right of eminent domain, it was authorized to acquire its right of way by purchase as well as by condemnation proceedings.   The nature of the right did not depend upon the manner in which it was acquired, so long as it was lawfully acquired.   The nature of the use gave to the right a public character, without regard to whether it was acquired by purchase or adverse proceedings.   There is certainly grave doubt

whether, under the evidence in this case, the use of the passage-way under the trestle by the defendant could be held to be more than merely permissive, or to establish a private right of way, of any width whatever, by prescription adverse to the public right in the land. The majority of the court do not, however, in view of the manner in which the case is now presented, consider it necessary to pass upon that question. What we do decide is that, under the evidence, the plaintiff is not entitled to a right of way of a greater width than that which he has enjoyed since 1885.

The judgment is reversed.