# White, Appellant, *v.* Philadelphia & Reading Railway Company.

*Railroad—Construction of road—Damages—Waters—Sewers.*

1. Where a railroad company acquires the right to construct its line at the natural grade of the surface, or above, or below the same, it has the right to interfere with the natural flow of the water resulting from rains or melting snow, and for any injury from the exercise of this right as the necessary consequence of the construction and maintenance of the road, a landowner cannot recover in the absence of anything to show that the railroad company had been guilty of some unlawful act or of negligence in the construction and maintenance of its line.

2. The owner of a city lot is not liable in damages for the natural flow of surface water from his lot into the cellars of the houses on the adjoining lots even though the water might be drained away by connection with the city sewer.

3. A railroad company is not required to pave the entire surface of its right of way and make it waterproof so that cellars abutting upon it may not become damp.

Argued Oct. 13, 1910. Appeal, No. 93, Oct. T., 1910, by plaintiff, from order of C. P. No. 1, Phila. Co., March Term, 1908, No. 5,396, entering judgment for defendant

WHITE, Appellant, *v.* PHILA. & READING RY. CO. 373

372, (1911).]      Statement of Facts—Arguments.

n. o. v. in case of William White v. Philadelphia & Read-
ing Railway Company. Before RICE, P. J., HENDERSON,
MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Af-
firmed.

Trespass to recover damages for injuries to real estate.
Before BRÉGY, P. J.

The facts appear by the opinion of the Superior Court.

At the trial the jury returned a verdict for $1,609. Sub-
sequently the court entered judgment for the defendant
n. o. v.

*Error assigned* was in entering judgment for defendant
n. o. v.

*Lester B. Johnson,* with him *John F. Keator,* for appel-
lant.—The rights secured by the railroad company, under
condemnation proceedings in 1852, to occupy its right of
way and operate its railroad did not include the right to
drain water into the plaintiff's cellar fifty years later:
McMinn v. R. R. Co., 147 Pa. 5; Crum v. Penna. R. R.
Co., 226 Pa. 151; Mulligan v. Penna. R. R. Co., 225 Pa.
76.

*John G. Lamb,* for appellee.—The right of way of the
Chestnut Hill Railroad Company, twenty-five feet in
width, next to the plaintiff's property, was acquired by
condemnation proceedings from the then owner of a large
tract of land including what is now plaintiff's property.
The compensation then paid included every injury to the
entire tract necessarily resulting from the construction
and operation of the railroad: Davis v. R. R. Co., 26 Pa.
Superior Ct. 364; Updegrove v. R. R. Co., 132 Pa. 540;
Kemp v. R. R. Co., 156 Pa. 430; Curran v. East Pitts-
burg Borough, 20 Pa. Superior Ct. 590; Stork v. Phila-
delphia, 195 Pa. 101; McGrane v. Ry. Co., 20 Pa. Superior
Ct. 200; Cooper v. Scranton, 21 Pa. Superior Ct. 17; Herr
v. Altoona, 31 Pa. Superior Ct. 375.

OPINION BY PORTER, J., April 17, 1911:

The appellant brought an action of trespass against the defendant company averring that the latter had been guilty of negligence in so maintaining and operating its line that water "falling, deposited and collected on the roadbed thereof, was collected and allowed by said defendant company to stand and remain in said roadbed opposite to and alongside of plaintiff's property;" and had negligently removed a pipe or drain that was provided to carry away and drain off the water from said roadbed opposite plaintiff's premises, by reason whereof the water so collected was drained off through and under the tracks of the defendant company and into the cellar of plaintiff's property. After a trial there was a verdict in favor of the plaintiff, but the court below entered judgment in favor of the defendant non obstante veredicto; from which judgment the plaintiff appeals.

The property of the plaintiff in question consists of five houses fronting on Chelten avenue, in the city of Philadelphia, and extending back to the line of the right of way of the defendant company. It is conceded by the appellant that the Chestnut Hill Railroad Company acquired title to this right of way by condemnation proceedings, in 1852, and that the defendant company has acquired, by lease from the original company, the right to use said right of way and operate a railroad over the same. The property through which the original railroad company acquired its right of way, in 1852, consisted of a large tract of land, at that time owned by Jesse Large, and included not only the land taken for said right of way, but all the land of plaintiff involved in this suit. Any burden cast upon the land by the construction of the railroad, which detracts from its value, is presumed to have been considered by the viewers, or jury, in estimating the damages, and to have been paid to Jesse Large who then owned the land to which plaintiff has since acquired title. The railroad company thus acquired the right to construct its line at the natural grade of the

surface, or above or below the same, and this necessarily involved the right to interfere with the natural flow of the water, resulting from rains or melting snow. For any injury resulting from the exercise of this right as the necessary consequence of the construction and maintenance of the road this plaintiff cannot recover: Port v. Huntingdon & Broad Top R. R. Co., 168 Pa. 19; Updegrove v. R. R. Co., 132 Pa. 540; Kemp v. R. R. Co., 156 Pa. 430; Davis v. R. R. Co., 26 Pa. Superior Ct. 364. The burden was upon the plaintiff, in order to establish his right to recover, to aver and prove that the defendant had been guilty of some unlawful act or of negligence in the construction and maintenance of its line. There was in this case neither allegation nor evidence that the defendant company had diverted or interfered with any stream of water flowing in a definite channel. The utmost that can be asserted of the evidence is that it tended to establish that the slight embankment of the railroad company interfered in some measure with the general flow over the surface of the water resulting from rains falling upon the right of way, or perhaps to a very limited extent upon land across the track from plaintiff's property. Counsel for plaintiff contend that this evidence was sufficient to justify a finding that the water collected on the west side of the tracks of the defendant company and percolating through the soil under the tracks found its way into the cellar of one of the houses of the plaintiff. There was no evidence indicating that the defendant company had done anything which tended to collect the surface water and discharge it upon plaintiff's land; the evidence indicated, on the contrary, that the company had taken sufficient measures to prevent the flow over the surface from the right of way on to the land of plaintiff. The water which found its way into the cellar of one of plaintiff's houses percolated through the soil, under the surface, and if it came from defendant's right of way it must have passed from the west side of the right of way under the tracks and through

the embankment to the east side where the house in question stood.

The testimony as to the manner in which the defendant company maintained its tracks and right of way disclosed that the tracks were ballasted in the approved modern method with broken stone. The right of way, with the tracks upon it, crossed Chelten avenue a short distance south or southwest of the property of plaintiff and extended northward, curving to the east, along the rear of the several lots of plaintiff, crossing Baynton street, a public highway, a short distance northward. Baynton street was higher than Chelten avenue and the natural drainage, along the right of way, was from that street toward Chelten avenue, passing along the rear of the property of plaintiff. The defendant company had constructed and maintained an open ditch, about six inches deep on both the east and west sides of its tracks, entirely within its right of way, for the purpose of conducting the surface water, which fell upon or found its way to the right of way, from Baynton street along the rear of plaintiff's property. Prior to 1902 the water from these drains had been discharged, south of plaintiff's property, into and over the pavement of Chelten avenue, the water from the drain upon the west side of the track passing under the track through a terra cotta pipe to the east side. The railroad was double-tracked in 1902, which necessitated the removal of the drain upon the west side to a line still further west, beyond the second track. The plaintiff testified that at the time this was done the terra cotta pipe which before had passed under the single track of the railroad was removed. The testimony of the plaintiff clearly disclosed that the maintenance of the terra cotta pipe became useless when the second track was laid upon the right of way, for the reason that the water would not have passed through it from the west to the east side of the tracks, his testimony upon that point being direct and positive, as follows: "After that the railroad put down two tracks and they

took up that terra cotta pipe, and the roadbed on the west side of their track is lower than Chelten avenue; consequently the water couldn't run off." This testimony out of the plaintiff's own mouth demonstrates that the defendant was not guilty of negligence when it removed the terra cotta pipe which had been before maintained under the single track, the roadbed west of the new track being lower than Chelten avenue. The fact that this plaintiff's property is upon the east and not the west side of the right of way must be kept in mind. There is in the case no evidence that the drain on defendant's right of way and on the east side of its track was ever overflowed or that any water ever passed from it over the surface into or upon the property of plaintiff. The plaintiff asserts that the evidence was sufficient to warrant a finding that the surface water which fell upon the right of way was permitted to soak into the ground and, the embankment of the railroad being higher than the property of the plaintiff, the water thus absorbed by the earth found its way into the cellar of the house in question. The primary contention of the plaintiff amounts to this, that as the right of way of the defendant and the property of the plaintiff were both within the limits of the city, and the defendant company had by grading its railroad changed the natural grade of the surface, it was bound to take care of all the surface water received from rains, prevent its being absorbed by the earth and conduct it to a sewer. The plaintiff relies in support of this doctrine upon the dictum in Bentz v. Armstrong, 8 W. & S. 40, and asserts that the failure of the defendant company to pave its right of way and the drains which it had constructed thereon and to take care of the water as above indicated, involved a breach of duty to plaintiff, for which neglect he may maintain this action. The difficulty with this contention of plaintiff is that the dictum upon which he bases it has been decided not to be the law, it having been expressly decided in Sentner v. Tees, 132 Pa. 216, that the owner of a city lot

is not liable in damages for the natural flow of surface water from his lot into the cellars of the houses on the adjoining lots, even though the water might be drained away by connections with the city sewer; and in Rielly v. Stephenson, 222 Pa. 252, the dictum in Bentz v. Armstrong was flatly repudiated. Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence unavoidable loss is brought upon his neighbor, it is damnum absque injuria: Strauss v. Allentown, 215 Pa. 96. The defendant company had the unquestionable right to construct and maintain its railroad within the lines of its right of way at such grade and to add such tracks from time to time as the exigencies of its business required. The tracks of a railroad are usually slightly elevated above the general level of the right of way and the maintenance of drains along the side of the track and within the limits of the right of way is the necessary result of the construction of the railroad and is a matter which is supposed to be within the contemplation of the parties when the company pays its money for the right of way: Updegrove v. R. R. Co., 132 Pa. 540. The mere fact that the surface water which fell upon or found its way to the embankment of the railroad company and was there absorbed by the earth and so rendered damp the cellar of plaintiff which directly abutted upon the right of way did not entitle the plaintiff to recover; he was required to prove some negligence upon the part of the defendant company and that such negligence caused the injury. Negligence is not to be presumed from the mere fact that the property of the plaintiff was injured; he was bound to produce evidence from which a jury should be permitted to find that the defendant was guilty of negligence: Berninger v. Ry. Co., 203 Pa. 516.

The evidence produced by the plaintiff entirely failed to establish any fact from which a jury should have been permitted to infer that the defendant company had been guilty of any negligence which caused the alleged injury

to his property.  His own testimony disclosed that the water, from whatever source it came, began to run into this cellar in 1901 and that it continued to do so until May, 1908, when this suit was brought.  It thus appears that there was water running into the cellar before the terra cotta pipe which had conducted the water from the drain on the west side to the east side of the track, nearer to the property of plaintiff, was removed; so that a jury should not have been permitted to find that the removal of that pipe was the cause of the dampness of the cellar. And as we have above said the testimony of the plaintiff disclosed that the maintenance of that pipe had become useless, in 1902, when the railroad was double-tracked. The contention of the plaintiff that the evidence would have warranted a finding that the defendant had intercepted the flow of water which ran eastwardly on Baynton street and caused it to flow down the drain on the west side of the tracks, opposite the property of plaintiff and that this caused the flow of water into plaintiff's cellar is without merit.  A pipe ten inches in diameter had been maintained, whether by the defendant or the city does not appear, for the purpose of conducting the water on Baynton street under the tracks of the defendant, prior to 1907, when because of the complaints of this plaintiff a second pipe was put in at that point which was admittedly sufficient to carry all the water that ever ran there.  This was done a year before the plaintiff brought this action, yet the evidence of the plaintiff was explicit that the supply of this ample system of drainage at Baynton street had no effect upon the flow of water into the cellar of his house.  The drain on the west side across the track from plaintiff's property, had been entirely relieved of the flow of water from Baynton street, but plaintiff's cellar continued damp as it had been before. The evidence of the plaintiff was such that no jury should have been permitted to infer the fact that the dampness of the cellar was the result of an insufficient provision for the flow of water under the tracks at Baynton street.

The defendant company had, in 1905, owing to the complaints of this plaintiff, made an effort to relieve the difficulty by constructing a connection with the sewer on Chelten avenue and providing an inlet to receive the water from the drain on the east side of the track near the property of the plaintiff. There was no evidence which indicated that this inlet was not ample to receive all the water which reached it, nor was there any evidence that the connection between the inlet and the sewer was improperly constructed or that it leaked. The plaintiff testified explicitly that the construction of this sewer inlet had no effect whatever upon the flow of water upon his property, and, therefore, it is manifest that the construction of this inlet did not cause the injury of which the appellant complains. The practical contention of this plaintiff is that the defendant company is required to pave the entire surface of its right of way and make it waterproof, so that cellars abutting upon it may not become damp. This duty was not cast upon the defendant, or its predecessor, at the time the right of way to construct a railroad was acquired. The specification of error is dismissed.

The judgment is affirmed.