## Olympian Sportsmen, Inc. v.
## Erie-Lackawanna Railway Company

*P. Raymond Bartholomew,* for plaintiff.
*Robert L. Walker,* for defendant.

STRANAHAN, P. J., December 20, 1968.—In this action in equity defendant has filed specific exceptions to plaintiff's complaint in the nature of a demurrer.

The complaint sets forth two alternative causes of action, each relating to a distinct right of crossing over the tracks of defendant railway company in the Township of Hickory.

## FIRST CAUSE OF ACTION

In its first cause of action plaintiff relies upon the right to acquire a right of way across the railroad's land by prescription. It alleges that it owns a 15 acre piece of land extending from the Wheatland-West Middlesex Road to the Shenango River, the railroad being along and contiguous to the highway. It complains that defendant has blockaded this highway and requests the court to order defendant to reopen it. It rests its right squarely upon the proposition that it and its predecessors in title have used the crossing adversely and continuously for more than 21 years. While the words adverse possession are used from time to time in plaintiff's brief, it is not adverse possession that is the basis of its claim, but a prescriptive right allegedly acquired by continuous adverse use of the crossing for more than 21 years, a rule comparable in every way to the principle of adverse possession, except that adverse user and not actual adverse possession is the right relied upon.

In general a prescriptive right of way over the land of another may be acquired under the same conditions as title to a portion of another's land by adverse possession.

However, there is no doctrine more firmly imbedded in the law of Pennsylvania than that land embraced within a railroad right of way is held for public purposes and for that reason cannot be acquired by adverse possession: Conwell v. Philadelphia and Reading Railroad Co., 241 Pa. 172. In that case it is stated that the railroad company holds its land in trust for the people of the Commonwealth; a trust of this character is a direct and continuing trust against which no statute of limitations runs. See also Pennsylvania Railroad Co. v. Borough of Freeport, 138 Pa. 91.

This rule is based upon the principle that a railroad is essentially of a public nature and that public rights cannot be destroyed by long continued encroachment: Commonwealth v. McDonald, 16 S. & R. 390.

It follows necessarily that no right of easement across the tracks and land of defendant railroad were acquired by plaintiff and its predecessors in title by prescription. While this precise factual question has not been expressly ruled upon by the Pennsylvania appellate courts where the alleged right of way crossed the railroad it was obviously assumed in the case of Davis v. Wheeling, Pittsburgh and Baltimore Railroad Company, 26 Pa. Superior Ct. 364, wherein that exact question arose and the court stated: "There is certainly grave doubt whether, under the evidence in this case, the use of the passageway under the trestle by the defendant could be held to be more than merely permissive, or to establish a private right of way, of any width whatever, by prescription adverse to the public right in the land."

The precise question now before us, however, arose in the Mercer County case of A. Wishart & Sons Com-

pany v. The Erie Railroad. While unreported it may be found in the office of the prothonotary of Mercer County at October term, 1923, no. 1, in equity.

In that case the tracks of the Erie Railroad extended north and south immediately west of Broadway in the city of Farrell. Plaintiff, a building contractor, had its store on Broadway, and its freight yard directly opposite the store across the tracks of the railroad. Plaintiff proved that it and its predecessors in title had used the crossing at this very point for more than 50 years, extending back to the days when the railroad property was owned by the Erie extension of the Pennsylvania Canal, and a high bridge was located at that point. It was also proved that for more than 21 years the public had traversed the crossing and traveled along the west line of the railroad northwardly to Staunton Street, so that plaintiff claimed that the crossing was both a private and public crossing. The court, (McLaughrey, J.) entered a decree for defendant on the authority of the cases cited above and others, stating at page 6 of the opinion:

"Numerous cases could be cited sustaining the position of the defendant that no title could be acquired by another to the surface of any portion of the land owned by a Railroad Company by adverse possession, however long continued.

"It is contended by the complainant," the opinion continued, "that this doctrine does not apply to rights of way *across* railroad tracks and some cases have been cited for the purpose of showing that a distinction has been made by the courts between a right of way acquired by the continued use along a railroad right of way, and one across a railroad right of way. It would seem that in some of the statutes such distinction has been made, but from a careful search of the law in Pennsylvania, we are unable to find such a distinction as would justify the conclusion that the continued use

of a driveway over the private property of a railroad company would acquire such a title as would preclude the railroad company from making use of any portion of its right of way or carrying on its business."[1]

We conclude that so far as plaintiff's first cause of action is concerned the demurrer would have to be sustained.

## SECOND CAUSE OF ACTION

Plaintiff's second cause of action relates to an entirely different crossing, and is based upon a different principle. The complaint alleges that several years ago it constructed a crossing near the first one and to the knowledge of defendant resurfaced it from time to time for several years by adding dirt and soil, by keeping it clear, and by spending in excess of $75 yearly, in addition to removing snow, ice and other debris that accumulated on it. In short it claims an irrevocable license to continue to use the second crossing on the basis of having continued over a period of years to spend money on its improvement while the railroad, knowing of the expenditure of funds, remained silent and did not interfere.

If plaintiff can prove these facts they may well come within the rule that has always been recognized as an

---

[1] The Wishart case was appealed by the complainant to the Supreme Court who affirmed it, but on the ground that inasmuch as the complainant had contended to some extent that the prescriptive right of way over the railroad was a public one the case should have been filed by the Attorney General or the District Attorney as in any other injunction to enjoin a public nuisance. The complainant was about to resume the litigation under the name of the Attorney General when the railroad company engaged it to erect a $25,000 freight station in Farrell, an act which cooled immediately the complainant's ardor for litigation. It may be noted in connection with the recent interest in canal construction in this climate that it was the history of the Erie Extension Canal that it froze in the winter, dried up in the summer, overflowed its banks in the spring, and was supplanted by the less expensive and more efficient method of transportation by railroad.

exception to the temporary nature of permissive licenses, namely that when a licensee has spent money in reliance upon a license without objection or interference by the licensor the latter is estopped to interfere with the improvements thus created.

As stated by Duncan, J., in LeFevre v. LeFevre, 4 S. & R. 241, at page 245, "A parol license may be revoked, but if it has been acted upon and the party put to expense, it cannot be recalled and the party made a wrong doer."

See also Baldwin v. Taylor, 166 Pa. 507, wherein the court stated:

"Yet an equitable estoppel may convert a license into what is in effect, an easement, "not upon the principle, however," says Judge Duncan in LeFevre v. LeFevre, 4 S. & R. 241, "that the right passes by the parol agreement, but that whenever a party has in part executed it, by payment of money, taking possession and making valuable improvements, the conscience of the other is bound to carry it into execution and equity will compel him to do it."

Likewise in Harris v. Brown, 202 Pa. 16, the court refused to enjoin the use of a business name which the defendant had made valuable by stating at page 22:

"It is undoubtedly true that a mere license without consideration is determinable at the pleasure of the licensor. But that is not the rule in this state where the enjoyment of the license must necessarily be, and is, preceded by the expenditure of money. In such cases, the license becomes an agreement on a valuable consideration and is irrevocable."

In Dzedzy v. McCreary, 12 Chester 215, at page 219, Gawthrop, J., stated the rule as follows:

"When the owner of land, with full knowledge of the facts, tacitly permits another to do acts upon the land a license may be implied from his failure to object."

He held that "the license to do something on the li-

censor's land, when followed by the expenditure of money on the faith of it, is irrevocable and is to be treated as a binding contract."

Of course it would be incumbent upon plaintiff not only to prove that defendant knew that plaintiff had spent money in maintaining and improving the second crossing, and remained silent, but that plaintiff relied upon that silence in continuing to spend money to maintain and improve the crossing after defendant had such knowledge: Bieber v. Zellner, 421 Pa. 444.

The above equitable principle would appear to be more readily applicable to the instant case in view of the fact that if plaintiff in this case is denied a right of crossing the railroad on the theory that its right rests upon a mere permissive and revocable license, it would be utterly deprived of any access whatever to its 15 acres of land beyond the railroad property.

Such a result would be contrary in spirit to the legislative policy of Pennsylvania announced by the Act of February 19, 1849, P. L. 79, sec. 12, 67 PS §381, which requires railroads to maintain causeways over lands which it crosses, so that one part will not be separated from and made unavailable from another because of the railroad bisecting the whole property. While we do not say that this act is directly applicable to the present situation, it plainly declares it is the legislative policy in this state that when a railroad traverses the land of another it is required to create and maintain at its own expense a crossing over the railroad so that the land beyond the crossing may be available to him. How much stronger is the instant situation when plaintiff notwithstanding it has spent its money for years in reliance upon the silence of defendant is deprived of any access to or use of the land whatever.

In addition, mention should be made of the principle that when a conveyance leaves the land conveyed or

surrounded by the land of the grantor or grantee a way "of necessity" is implied in favor of the land-locked parcel: Thos. Zell's Exrs. v. Universalist Society, 119 Pa. 390. Plaintiff conceivably might be able to prove the land is so that since access to it from a highway cannot be had except over the land of the grantor, the grantee is entitled to a way of necessity over defendant's intervening land, notwithstanding it is the land of a railroad that is involved.

Again, while we recognize that a way of necessity may not be implied in the instant situation it is difficult to tell at the pleading stage what facts might be developed by evidence at a trial.

Accordingly, in view of the rule that if there is any doubt as to whether a demurrer should be sustained, it should be resolved against the objecting party: Sun Ray Drug Co. v. Lawler, 366 Pa. 571.

We overrule the demurrer as to plaintiff's second or alternate cause of action.

### ORDER

And now, December 20, 1968, defendant's preliminary objections to plaintiff's first cause of action are sustained.