## Justice et al. versus Nesquehoning Valley Railroad Company.

1. Whether a structure is a fixture, or not, depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose and the intentions of those concerned in the act.

2. Where a railroad company was a trespasser and its entry upon land not in conformity with law, these irregular proceedings did not operate as a dedication to the landowners of the property of the company, placed upon the land, so as to entitle said landowners to include said property in an assessment of damages under the railroad law, and recover their value as an accession to the value of the land taken by the company.

April 2d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of Carbon county: Of January Term 1878, No. 255.

The proceedings in the court below were as follows: Esther S. Justice and others were the owners of a tract of land which in 1869 the Nesquehoning Valley Railroad Company made an effort to purchase, but owing to the large number of the owners and their failure to agree upon terms, the offers of the company were refused. The company then entered upon the land and built its railroad, to which there was no objection made other than a notice to repair injuries done to tenants. A bond was offered to the husband of one of the owners which was refused. In 1872 the owners united in an action of ejectment against the company, in which judgment was confessed by the company, April 3d 1874, and execution stayed until proceedings to assess damages should be completed. The company then petitioned the court for the appointment of viewers to assess the damages for injuries done to the owners, by the construction of their road, who were appointed and assessed the damages at $4885.94. From their report, the landowners appealed to the Court of Common Pleas. At the trial, before Dreher, P. J., the plaintiff submitted the following point, to which is appended the answer of the court:—

"That in estimating the damages the jury are to consider the market value of the land on the 3d day of April 1874, the date of filing the petition for viewers to assess damages, including therein all structures thereon erected, such as railroad ties, rails, &c., and

[Justice v. Nesquehoning Valley Railroad Co.]

find to what extent the property has been injured by the location and construction of the railroad, and their verdict should be for the amount of the injury and the market value of the land with the improvements thereon, taken on the 3d day of April 1874."

Ans. "That proposition we negative. We ruled in this case upon an offer of evidence upon the part of the plaintiffs that that was not the rule of law; they cannot recover for the improvements which the railroad company put upon the land, if they occupied it for the purpose of constructing their road."

In their general charge the court said:—

"You are to allow for the difference between what the property as a whole property would have brought in the market before the railroad was located (or what it would have brought unaffected by the railroad), and what it would bring in the market immediately after the railroad was built; and if it is worth less as affected by the railroad, then the difference between those two values constitutes the amount of damages the party is entitled to."

The verdict was for the plaintiffs for $1074.41. They then took this writ and, inter alia, assigned for error the answer to the foregoing point and the portion of the charge noted.

*E. G. Platt, Samuel Dickson* and *J. D. Bertolette*, for plaintiffs in error.—The value of the land is to be estimated at the time of its lawful occupation by the railroad: Graham v. Connersville & N. C. Junc. Railroad Co., 36 Ind. 467; United States v. Land in Monterey Co., 47 Cal. 515. Whatever is annexed to the soil, becomes part of the realty: Minshall v. Lloyd, 2 M. & W. 459; Lee v. Risdon, 7 Taunt. 191; Coombs v. Beaumont, 5 B. & Ad. 72; Hallen v. Runder, 1 C., M. & R. 266; King v. Johnson, 7 Gray 239; Voorhis v. Freeman, 2 W. & S. 116; Davis v. Moss, 2 Wright 346.

The rule is paramount to the *intention* of the person by whom the annexation is made. A man may thus find that he has made a gift, although without intention. Hence a structure erected on the land of another will become his property, although built with the view of sustaining and enforcing an adverse title to the land: Lee v. Risden, *supra*; Overton v. Williston, 7 Casey 155. This rule applies not only to houses and other structures, which are permanent in themselves, and may in some sense be regarded as principals rather than accessories, but to everything which is so far annexed to the land as to become part of the freehold. The law is clearly settled thus in Pennsylvania: Gray v. Holdship, 17 S. & R. 413; Morgan v. Arthurs, 3 Watts 140; Lemar v. Miles, 4 Ibid. 330; Overton v. Williston, *supra*; Oves v. Ogelsby, 7 Watts 106; Christian v. Dripps, 4 Casey 271; Pyle v. Pennock, 2 W. & S. 391; Harlan v. Harlan, 3 Harris 507; Heise v. Railroad Co., 12 P. F. Smith 68.

[Justice *v*. Nesquehoning Valley Railroad. Co.]

*Charles Albright* and *Henry Green*, for defendant in error.—
The measure of damages for constructing a railroad through the
property of a landowner, is the difference between the value of the
land before the road was built and its value when the road was
completed: Schuylkill Navigation Co. *v*. Farr, 4 W. & S. 362;
Harvey *v*. Lackawanna and Bloomsburg Railroad Co., 11 Wright
428; Hornstein *v*. Atlantic and Great Western Railroad Co.,
11 P. F. Smith 90; Penna. & N. Y. Canal and Railroad Co. *v*.
Bunnell, 31 Id. 425. The right of the company accrued upon its
original entry, whether tortious or otherwise: Lawrence's Appeal,
28 P. F. Smith 365. In this state, neither in an action of tres-
pass, nor in a proceeding for compensation, can the owner recover the
value of the improvements put upon the land: Borough of Harris-
burg *v*. Crangle, 3 W. & S. 460; McClinton *v*. Railroad Co., 16
P. F. Smith 409. The right of the company is a mere easement,
and is not the subject of a lien or sale under execution: Western
Penna. Railroad Co. *v*. Johnston, 9 P. F. Smith 290. The decis-
ions in Indiana and California are based upon provisions of law
peculiar to those states.

Chief Justice AGNEW delivered the opinion of the court, May
6th 1878.

This was a proceeding to view and value land taken by the
Nesquehoning Valley Railroad Company for its railroad, and to
assess damages therefor. It came into the court below by appeal
from the finding of viewers, and was tried before a jury.

As stated in the argument of the plaintiffs in error, there is a
single question raised by all the assignments of error, to wit:
whether the plaintiffs were the owners of the ties, rails and other
structures placed on the land by the railroad company before the
3d of April 1874, the date of the verdict in ejectment. The facts
are few, and fairly raise the question. The plaintiffs were the
owners of a large tract of land lying at the entrance or " key " to
the valley, and divided by the Nesquehoning creek, leaving fifty
acres to the south of the stream, consisting of valley and timbered
hillside. The railroad nearly bisects these fifty acres. In 1869
the railroad company endeavored to purchase the whole of this part,
but owing to the large number of owners failed to do so. The
company entered and built its road without objection, except it was
notified to repair injuries to tenants. A bond was offered to the
husband of one of the owners, who said he did not want it. The
facts exhibit no outrage in the taking of the property, but the
entry was clearly a trespass. No bond having been filed and
approved according to law, the entry was irregular, and subjected
the company to an action of ejectment, in which judgment was
confessed April 3d 1874, and execution stayed until the proceeding
to assess the damages should be completed.

The company being a trespasser, and the entry not in conformity

[Justice *v.* Nesquehoning Valley Railroad Co.]

to law, the question is, whether this irregular proceeding operated as a dedication in law of the property in the ties and rails to the owners of the land, so as to entitle them to include these things in the assessment of the damages under the railroad law, and recover their value as an accession to the value of the land taken by the company. A careful consideration and analysis of the case before us will show that it differs in essential respects from that of a mere *tort-feasor,* whose structures upon the land of another enure to the benefit of the owner of the land.

The common-law rule is undoubted, that a trespasser, who builds on another's land, dedicates his structures to the owner. The reason is obvious, for like him who sows where he cannot reap, he can obtain no advantage by his wrong, and having affixed his chattels to the realty, they become part of it, and he cannot add further injury by tearing them down. Even a tenant is to a modified extent affected by the same rule. If he improves under a covenant, the covenant governs his right of removal. So, if in favor of trade he erects structures for his business, doing no unnecessary or irreparable injury to the land, yet having done this without consent, he must remove his erections before the expiration of his term, otherwise he will be presumed to dedicate them to his lessor. There is also to be noticed a clear distinction between putting down a railroad track under a lease, and an act of appropriation of the land under a charter. This is clearly pointed out in Heise *v.* Pennsylvania Railroad Co., 12 P. F. Smith 67. The very intent of an appropriation of land, is to place upon it, and own and use the structures necessary to carry out the charter purpose. Hence no dedication of the material can be inferred in such a case. In this we perceive how differently the common law itself must view the application of its own rules. The great merit of the common law, so often commended by jurists, is its plasticity as a system of principles (and not merely of rigid rules), which can be adapted to new conditions in the affairs of men. Modern inventions and discoveries have so far transcended the conditions of former times, that to apply the rule as to a mere trespasser, whose entry is a *tort* pure and simple, to the case of one authorized to enter for a great public purpose, merely because of an irregularity in the manner of proceeding, would be as vain as to attempt to dress a full grown man in the garb of his childhood.

This is not the case of a mere trespass by one having no authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having a right to enter, and to place these materials on the land taken for a public use—materials essential to the very purpose which the state has declared in the grant of the charter. It is true the entry was a trespass, by reason of the omission to do an act required for the security of the citizen, to wit: to make compensation or give security for it. For this

injury the citizen is entitled to redress. But his redress cannot extend beyon l his injury. It cannot extend to taking the personal chattels of the railroad company. They are not his, and cannot increase his remedy. The injury was to what the landholder had himself, not to what he had not. Then why should the materials laid down for the benefit of the public be treated as dedicated to him? In the case of a common trespasser, the owner of the land may take and keep his structures *nolens volens*, but not so in this case; for though the original entry was a trespass, it is well settled, that the company can proceed in due course of law to appropriate the land, and consequently to reclaim and avail itself of the structures laid thereon. Harrisburg *v.* Crangle, 3 W. & S. 460; McClinton *v.* Railroad Co., 16 P. F. Smith 409; Railroad Co. *v.* Burson, 11 Id. 379. And in Harvey *v.* Thomas, 10 Watts 63, it was held that the subsequent proceeding to assess compensation, was a protection against a recovery of vindictive damages.

Another evident difference between a mere *tort-feasor* and a railroad company is this—the former necessarily attaches his structure to the freehold, for he has no less estate in himself, but the latter can take an easement only, and the structures attached are subservient to the purpose of the easement. A railroad company can take no freehold title, and when its proper use of the easement ceases, the franchise is at an end. There is no intention in fact to attach the structure to the freehold. We have therefore these salient features to characterize the case before us, to wit: the right to enter on the land under authority of law, to build a railroad for public use; the acquisition thereby of a mere easement in the land; the entire absence of an intention to dedicate the chattels entering into its construction to the use of the land; the necessity for their use in the execution of the public purpose; and, lastly, the power to retain and possess these chattels and the structures they compose, by a valid proceeding at law, notwithstanding the original illegality of the entry. For the latter the owner has his appropriate remedies; his action of ejectment to recover and retain his land and its use, until the company shall proceed according to law, and his action of trespass to recover damages for the injury sustained by the unlawful entry and holding possession, and whatever loss has been caused by these illegal acts.

There are some analogies bearing remotely on the question before us, showing that property is not gained by the owner of land because found upon it. Thus, in the case of property carried off by a flood and stranded on the premises of another, the owner may follow it, enter and take it, or if the owner of the land convert it, may recover its value: Forster *v.* Bridge Co., 4 Harris 393; Etter *v.* Edwards, 4 Watts 63. And even a sale will not carry unknown secreted valuables: Hutmacher *v.* Harris, Adm'r, 2 Wright 491.

But a case bearing a close analogy, indeed deciding the principle

[Justice v. Nesquehoning Valley Railroad Co.]

on which this case rests, is Meigs's Appeal, 12 P. F. Smith 28. In the year 1862, the United States, in the prosecution of the war, erected buildings on the public common of York for military barracks and hospitals. After the close of the war the government was about removing the materials, when the borough authorities proceeded to enjoin the removal, on the ground that the buildings had been affixed to the realty. In that case we said, referring to Hill v. Sewald, 3 P. F. Smith 271, that the old notion of a physical attachment had long since been exploded in this state, and that the question of fixture, or not, depends on the nature and character of the act by which the structure is put in place, the policy of law connected with its purpose and the intentions of those concerned in the act. This language applies emphatically to the case now under consideration. It was further said then, the nature and character of the structures are also to be considered. They were not improvements made for objects connected with the soil—neither intended to give value to it, nor to receive value from it; so, precisely here, the railroad having no connection with the improvement of the land or its uses. "The act," (says the opinion), "is distinguishable from that of an ordinary trespasser. There was no intent to improve the ground, or to make it accessory to some business or employment. It was not an assertion of title in the soil, or of an intention to hold adverse possession. Indeed there was not a single element in the case which characterizes the act of a *tort-feasor*, who annexes his structure to the freehold, and is therefore presumed to intend to alter the nature of the chattel and convert it into realty, and thereby to make a gift of it to the owner of the freehold." This language strongly characterizes the case before us. Here as there the purpose is a public use; there was no intent to hold adversely as a trespasser, nor to improve the ground or make it useful and valuable by the erection. The rails and ties were not intended to be attached to the freehold, but were laid down as part of an easement under a franchise of the state. There was no intent to use the land as an owner would, and no intent to abandon the materials to the use of the owner, but they were subject to a legal proceeding resulting in maintaining both ownership and use for the charter purpose. We think therefore the ownership of the rails, ties, &c., did not vest in the plaintiff in error by the mere trespass in the original entry.

Judgment affirmed.

MERCUR and GORDON, JJ., dissenting.