# Nittany Valley Railroad Company *v.* Empire Steel & Iron Company, Appellant.

*Equity—Jurisdiction—Corporations—Protection of franchises—Remedy at law.*

To warrant the intervention of equity for the protection of a franchise it is not necessary that the owner of the franchise should have first established his right by action at law. The right for whose protection the aid of equity is invoked should, however, be coupled with possession.

A court of equity has power to hear and determine a case where a landowner would seek to interfere with the operation of a railroad on the ground of some technical defect in the title of the company to its right of way. The remedy at law is totally inadequate, and to compel the railroad company to suspend its operations until its right could be first determined at law would be destructive of its rights and work great damage to the company and the public.

*Railroads—Mortgage—Eminent domain—Construction of tracks— Equity.*

Where a railroad with the right of eminent domain lays tracks upon the land of another with the landowner's consent and approval, a prior mortgage executed by the landowner does not cover the tracks and roadbed of the railroad; and this is the case although the land was not condemned under the right of eminent domain, and no money damages were in fact paid.

Argued April 23, 1907. Appeal, No. 82, Jan. T., 1907, by defendant, from decree of C. P. Centre Co., Nov. T., 1899, No. 2, on bill in equity in case of Nittany Valley Railroad Company v. The Empire Steel & Iron Company, Lessee, The American Bonding & Trust Company, Lessor, and the Nittany Iron Company. Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

McCLURE, P. J., filed the following opinion:

1. The plaintiff is a corporation duly incorporated under the laws of Pennsylvania for the purpose of constructing, maintaining and operating a railroad in the county of Centre from a point near Bellefonte on the Bellefonte, Nittany &

Lemont Railroad to the ore banks in the Nittany Valley near Zion.

2. During the year 1887, the railroad company constructed its road from a point on the Bellefonte, Nittany and Lemont road south of the furnace plant known as Valentine Company's furnace and ending at the ore banks near Zion, a distance of about five miles; and in the spring of 1888, at the request of the Valentine Ore Land Association, the then owner in fee of the furnace property, the railroad was extended through the furnace property and another connection made with the Bellefonte, Nittany & Lemont Railroad north of the furnace. This was built under an arrangement between the ore land association and the railroad company by which the tracks when built were to be used in common by both, and that upon payment of the note given by the ore land association for the cost of the road the branch was to become the property of the ore land association with the right of the railroad company to use it perpetually free of charge. This branch and sidings w. ̣ accordingly built by the railroad company at a cost of about $16,000. The ore land association never paid the cost of construction. It was borne entirely by the railroad company.

3. This road was fully equipped by the plaintiff with engines and other rolling stock, and was used uninterruptedly by the railroad company for all purposes including the hauling of coal, coke and iron ore to and from the furnace erected on the ore land association's property down until April 28, 1899, when the Empire Steel & Iron Company came into possession of the plant and took possession of that portion of the railroad which was upon what is known as the furnace property. Both the Centre Iron Company and the Valentine Iron Company, the prior lessees and operators of the furnace, recognized the rights of the plaintiff, its title to the railroad and its equipment and to payment of its charges for all traffic received from them in the operation of the furnace.

4. Prior to and on August 2, 1886, Jacob D. Valentine and others were the owners of this tract known as the furnace property upon which were erected an old iron furnace, rolling mill, forge and other buildings, with horse railroad tracks running from the furnace to connect with the Bellefonte & Snow Shoe Railroad. On August 2, 1886, Valentine and others .

conveyed the property to Edmund Blanchard and William M. Stewart for the consideration of $435,000, as trustees for the Valentine Ore Land Association, and the ore land association went into possession of the premises conveyed in the deed. On the same day Blanchard and Stewart executed and delivered to the Fidelity Insurance, Trust & Safe Deposit Company, trustee, a mortgage on this property to secure the payment of $600,000 in bonds. Default having been made in the payment of the bonds, foreclosure proceedings were instituted and the property sold by the sheriff to the Fidelity Insurance, Trust & Safe Deposit Company, trustee.

5. On February 26, 1891, the Fidelity Insurance, Trust & Safe Deposit Company, trustee, by deed of that date, conveyed the property in fee to the Valentine Iron Company, and the grantee, about the time of the execution and delivery of the deed, entered into possession of the premises. April 14, 1891, the Valentine Iron Company, by indenture of that date, mortgaged the property to the Fidelity Insurance, Trust & Safe Deposit Company to secure the payment of $75,000 of the bonds of the company. This mortgage was satisfied on May 18, 1896, and on May 1, 1896, a new mortgage was executed and delivered to John M. Dale, trustee, upon the same premises to secure new bonds of the company. A judgment was obtained by Robert Valentine against the Valentine Iron Company to No. 107, November Term, 1897, in the court of common pleas of Center county, for $90,000. An execution was issued upon this judgment and the real estate was sold to the plaintiff in the writ. The said Robert Valentine and wife, by indenture dated December 1, 1898, granted and confirmed the premises conveyed to him by the sheriff's deed to the American Bonding & Trust Company of Baltimore City, another of the defendants named in the bill in equity. The Empire Steel & Iron Company became the lessee of the property under Robert Valentine and the American Bonding & Trust Company. This company was in possession as lessee at the time of the filing of the bill in this case, but has long ceased to operate the plant, and since the filing of this bill Robert Valentine has died.

6. Subsequently, default having been made in the payment of the $75,000 of new bonds secured by the mortgage of the

Valentine Iron Company to John M. Dale, trustee, proceedings to foreclose the said mortgage were instituted, judgment obtained, a levari facias issued and the property sold by the sheriff to the Commonwealth Trust Company ; and the Commonwealth Trust Company, by the deed dated May 1, 1902, granted and conveyed in fee unto the Nittany Iron Company, in consideration of $90,000, all of the premises constituting the iron works and furnace property. The Nittany Iron Company, upon assuming control of the furnace property, prevented the plaintiff from using the tracks built by it through the yards of the furnace, or to move traffic within the limits of the furnace property, as the Empire Steel & Iron Company had done before them.

The plaintiff company, contending that it is the sole and exclusive owner of the franchises, tracks, sidings, switches, rolling stock and equipment of the railroad from its beginning on the Bellefonte, Nittany & Lemont Railroad, north of the furnace to the eastern terminus at the ore banks near Zion, and that it has the sole and exclusive right to operate the same without any interference on the part of the defendants, or any of them, and that as a common carrier it is obliged to accept and carry safely all freight and other traffic offered by the general public, and that by reason of the acts of the defendants it was unable to perform its duty, and has suffered great injury and damage by reason of the unlawful acts, filed this bill in equity requesting an injunction to issue restraining the defendants from further interfering with it in operating and carrying on the business of the railroad, and asking that an account be stated of its damages sustained. By answers filed the defendants set up title in the tracks running through the furnace property, and claim the right to the sole and exclusive possession of them.

The above is a general statement of the material facts involved in the controversy, which are not seriously in dispute.

### DISCUSSION.

At the hearing it was contended that the court was without jurisdiction as the bill is an ejectment bill, and the plaintiff is seeking to have a court of equity determine a pure question of law, and that before the plaintiff is entitled to the relief sought

it must first establish its right to the tracks by an action at law. It was admitted at the argument that the case as presented by the offers and testimony was different from that which appeared on the face of the averments of the bill, which is that the defendants were equitably estopped from setting up a title to the tracks in dispute. Contention is made further that while the court would entertain jurisdiction to inquire into the validity of the alleged equitable estoppel, still, as here, the alleged estoppel is invalid and ineffectual as against the defendants, the court should dismiss the bill on the merits. We have given the question of jurisdiction considerable thought, and have concluded that the court has jurisdiction of this bill on a well-defined equitable ground, namely, the violation of a franchise conferred by legislative authority. As the value of a franchise is dependent upon its exclusive use and possession, it may be protected on the ground of the inadequacy of the legal remedy and the probability of thus avoiding a multiplicity of suits. In England it was formerly required that the plaintiff first establish his right at law, but in this country it is well established that to warrant the interposition of equity for the protection of franchises it is not necessary that the owner of a franchise should have first established his right by action at law. The right for whose protection the aid of equity is invoked should, however, be coupled with possession : High on Injunctions, sec. 897, etc.

In a case where the public rights or private rights secured by statute and by contract are invaded and an injunction is asked for in order to protect them, no question of the amount of damages is raised, but simply one of right. The courts interfere to prevent wrong of a repeated and continuing character, or which occasion damages which are estimable only by conjecture and not by any accurate standard : Commonwealth v. Pittsburg & Connellsville Railroad Co., 24 Pa. 159 ; Walters v. McElroy, 151 Pa. 549 ; Shamokin Boro. v. Electric Railway Co., 196 Pa. 166.

Here the plaintiff had been for years in the exercise of its franchises without molestation on the part of the owners of the furnace, and was in possession of them at the time of the wrongs complained of in the bill. We think it is clear that a court of equity has power to hear and determine a case where

a landowner would seek to interfere with the operation of a railroad on the ground of some technical defect in the title of the company to its right of way. The remedy at law is totally inadequate, and to compel the railroad company to suspend its operations until its right could be first determined at law, would be destructive of its rights and work great damage to the company and the public. The motion to dismiss the bill for the want of jurisdiction is accordingly overruled.

This brings us to the important question in the case: whether or not the title to the railroad track passed to the defendant iron company by virtue of the sale of the furnace property under the mortgage of Blanchard and Stewart to the Fidelity Insurance Company, the subsequent sale of the property by the sheriff and the mesne conveyances by which title to the furnace property became vested in the iron company. There is no question that the railroad tracks were put upon this property as a permanent improvement, and had they been placed there by a private individual, or a company without the right of eminent domain, they would have become attached to the real estate and passed by the sale under the mortgage to the sheriff's vendee: Roberts v. Dauphin Deposit Bank, 19 Pa. 71; Albert v. Uhrich, 180 Pa. 283; Silliman v. Whitmer, 11 Pa. Superior Ct. 243; s. c. 196 Pa. 363. And the same might be true even if the company had the right of eminent domain but was precluded by statute or otherwise from condemning the property upon which the tracks were laid. In Price v. Weehawken Ferry Company, 31 N. J. Eq. 31, the railroad company constructed a track over a part of certain premises which were covered by a prior mortgage duly recorded. The track was not built under condemnation proceedings in eminent domain, but under a grant of right of way by the mortgagor over lands where there was an express inhibition in the company's charter against occupying them, and it was held that the company had no right to have a track put on the premises by them reserved from a sale under foreclosure of the mortgage. The same court, however, held that where a railroad company having power to acquire lands for its use has been permitted by the owner to enter into possession and construct its track upon the premises without compensation first made, in subsequent proceedings to con-

demn the measure of compensation is the value of the land and damages at the time of the entry and interest from such entry, irrespective of the improvements afterwards put upon it by the company, and that on foreclosure of a prior mortgage the mortgagee was not entitled to the value of the improvements : North Hudson County R. R. Co. v. Booraem, 28 N. J. Eq. 450. In St. Johnsbury, etc., R. R. Co. v. Willard, 61 Vermont, 134, the Essex County Railroad Company by virtue of some arrangement with the mortgagor who was in possession entered upon the land and constructed and operated its railroad. Twelve years afterwards Willard became the owner of the mortgage, foreclosed it and was put in possession. The company then petitioned to condemn the land, and Willard claimed his decree of foreclosure gave him title to the corpus of the railroad itself and in consequence he was entitled to its value as well as to the value of the land taken for its construction as damages. The court held the company was not a trespasser as to either mortgagor or mortgagee and said : " In the circumstances it is clear that the owner is not entitled to the improvements, and cannot have their value as damages. He has no claim in justice to have expenditures for such a purpose inure to his benefit. He is entitled to be paid the damage he has sustained and nothing more. The maxim quicquid plantatur solo, solo cedit, does not apply. The maxim has always had exceptions, and they increase with the ever varying necessities and exigencies of society.

" The improvements in question were made for a public use by one lawfully in possession, with the right to condemn to such use at any time; and herein lies the distinction between this case and Price v. Weehawken Ferry Co., 31 N. J. Eq. 31, relied upon by the defendant. In that case the company had no right to take the land or compensation, and the court said that therefore the maxim above referred to applied, but said it does not apply when the right to take exists." This is in harmony with the decisions of our Supreme Court. See Justice v. Nesquehoning Valley R. R. Co., 87 Pa. 28, which is cited by the Vermont court in support of its position.

Here the tracks of the plaintiff were placed upon the ground with the consent and at the request of the Valentine Ore Land Association the then owner of the fee. The land upon

which they were located was appropriated for public use and all that remained to the landowner was its claim for damages. Wadhams v. Lackawanna & Bloomsburg R. R. Co., 42 Pa. 303 ; Beale v. Penna. R. R. Co., 86 Pa. 509. The damages, if any were occasioned, belonged to the association. They were a personal claim of the owner; did not run with the land nor would they pass by its deed: McFadden v. Johnson, 72 Pa. 335 ; Davis v. Titusville, etc., Ry. Co., 114 Pa. 308. They were subject, however, to the rights of the mortgagee to have them applied to its debt : Elliott on Railroads, vol. 3, p. 1452. The right of the mortgagee is not to hold the tracks and roadbed as an improvement to the property, but to pursue the damages occasioned by the taking of the property : Jones on Mortgages, sec. 681 A. If the mortgagors and mortgagees had joined in a release it would not have operated as a conveyance of the right of way to the plaintiff, but simply as a discharge of the damages incurred by the construction and operation of the road. The title of the plaintiff came by its original entry upon the land with the consent of the owners : Lawrence's Appeal, 78 Pa. 365.

When the mortgage was given by the Valentine Iron Company in 1896, to John M. Dale, trustee, the railroad was located and had been in operation for many years over this land with the consent, knowledge and approval of the owners of the fee. Evidence was also offered to show that by correspondence a year or two after that Dale had personal knowledge of the existence of the road and the claims of ownership by the plaintiff company. Notice to the trustee would, of course, be notice to the bondholders. The correspondence we do not consider of importance, as the trustee was bound to take notice of the rights of the company as shown by the operation of the railroad upon the land by the plaintiff. Mr. Justice SHIRAS, in delivering the opinion of the court in Roberts v. Northern Pacific R. R. Co., 158 U. S. 1, on page ten, says: " It is well settled that where a railroad company having the power of eminent domain has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it en-

tered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession." And in support of this statement he cites Schuylkill, etc., Nav. Co. v. Decker, 2 Watts, 343 and McFadden v. Johnson, 72 Pa. 335. We do not see how Dale or the Nittany Iron Company can be considered to be innocent purchasers for value without notice.

No doubt at the time of the construction of the road it was thought to be of great benefit to the owner of the fee as well as the railroad company to have adequate railroad facilities for the hauling of freight to and from the furnace property, and that when all the advantages and disadvantages of the locating of the railroad upon the property were considered that the owner of the fee simple title, the Valentine Ore Land Association, had no claim for damages by reason of the location, construction and operation of the road. This company never set up any claim for damages, nor did its lessees, the Centre Iron Company, or its successor in title, the Valentine Iron Company, the purchaser at the sale on the mortgage, during a period of ten years of continuous operation of the railroad; and it must be apparent that if they had any claim for damages by reason of the construction of the road, they waived it. Furthermore, the Valentine Iron Company, the purchaser at the judicial sale under the mortgage, recognized the title of the railroad company to the tracks in dispute and acquiesced in their use and operation of the road while operating the furnace.

#### CONCLUSIONS OF LAW.

We accordingly conclude as matter of law that an injunction should be issued restraining the defendant, the Nittany Iron Company, from interfering with the corporate rights and franchises of the plaintiff in operating the main tracks through the furnace property, and that the plaintiff be placed in possession thereof.

2. That an account be stated of the damages sustained by the plaintiff on account of the unlawful acts of the defendant; the amount thereof to be ascertained upon final hearing of the parties.

*Error assigned* was the decree of the court.

*John Blanchard*, with him *Henry C. Quigley* and *Edmund Blanchard*, for appellants.—The court had no jurisdiction: Grubb's App., 90 Pa. 228; Washburn's App., 105 Pa. 480; Ferguson's App., 117 Pa. 426; Williams v. Fowler, 201 Pa. 336; North Pennsylvania Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507; Ege v. Kille, 84 Pa. 333; Railway Co. v. Peet, 152 Pa. 488; Wiser's App., 9 W. N. C. 508; Pittsburg, etc., Droveyard Co.'s App., 123 Pa. 250.

The bill should have been dismissed upon the merits: Washburn v. Copeland, 116 Mass. 233; Martin v. Jackson, 27 Pa. 504; Logan v. Eva, 144 Pa. 312; McCormick v. McMurtrie, 4 Watts, 192; Albert v. Uhrich, 180 Pa. 283; Sillman v. Whitmer, 11 Pa. Superior Ct. 243.

*John G. Love* with him *J. A. B. Miller*, for appellees.—The number of questions involved and the different defendants to the suit, and the question of accounting, in order to save multiplicity of actions, confers upon the courts equity jurisdiction: Woodward v. Tudor, 81* Pa. 382; Miller v. Miller, 60 Pa. 16; Big Mountain Improvement Co.'s App., 54 Pa. 361; Pennsylvania R. R. Co.'s App., 80 Pa. 265; Johnston v. Price, 172 Pa. 427; Miller's Appeal, 84 Pa. 391; Cumberland Valley R. R. Co. v. McLanahan, 59 Pa. 23; Putnam v. Tyler, 117 Pa. 570; Logan v. Gardner, 136 Pa. 588; s. c. 142 Pa. 442; Chapman v. Chapman, 59 Pa. 214.

Equitable jurisdiction does not depend on the want of a common-law remedy, but may be sustained on the ground that it is the most convenient remedy: Johnston v. Price, 172 Pa. 427; Brush Electric Co.'s Appeal, 114 Pa. 574; Penna. R. R. Co. v. Bogert, 209 Pa. 589; Gray v. Citizens' Gas Co., 206 Pa. 303.

It is the duty of purchasers of real estate to make inquiry respecting the rights of parties in possession, and, failing to do so, they are affected with constructive notice of such facts as would have come to their knowledge in the proper discharge of their duty, and purchasers who fail to make such inquiry are not innocent purchasers for value: Jamison v. Dimock, 95 Pa. 52; Sill v. Swackhammer, 103 Pa. 7; Miller v. Baker, 160 Pa. 172; Sayers v. Phillips, 5 Pa. Superior Ct. 343; Snively v. Hitechew, 59 Pa. 49.

PER CURIAM, May 13, 1907:

The decree entered in this case is affirmed at the cost of the appellant on the findings of fact and law by Judge McCLURE, specially presiding.