**Peck v. SEPTA**

*Richard W. Berlinger,* for plaintiffs.
*C. Neil Petersen,* for defendant.

NICHOLAS, *P.J.,* October 25, 1993—Plaintiffs, Herbert Peck and Evelyn Peck, are the owners of an approximately eight acre tract of land fronting on North Wales Road in Whitpain Township, Montgomery County. Plaintiffs' land is bisected by a railroad right-of-way held by defendant, the Southeastern Pennsylvania Transportation Authority (SEPTA). The SEPTA rail line separates the front portion of plaintiffs' property

from the rear six acres. It is plaintiffs' desire to subdivide their property in order to create a five lot residential development on the rear six acres, which portion is connected to the front portion of plaintiffs' property by an existing private crossing across the railroad tracks, and which currently has no independent access to a public road. Plaintiffs have filed the instant action for declaratory judgment in an attempt to facilitate their proposed subdivision.

Plaintiffs contend that under authority of the Act of February 19, 1849, P.L. 79 §12, 67 P.S. §381, renumbered 15 P.S. §4101 and repealed by the Act of July 1, 1978, P.L. 598, no. 116 §2, and under the language of an indenture dated February 24, 1874, SEPTA is required to agree to relocate the existing private crossing to a location of plaintiffs' choice, to pave the crossing, and to widen it to a width of 15 feet, so that the prospective residents of plaintiffs' proposed five lot development would have means of ingress and egress by access to North Wales Road. Plaintiffs further contend that the cost of the crossing is SEPTA's obligation and that SEPTA must bear the burden of paying for any safety improvements which the expansion and increased use of the crossing would require.

Plaintiffs alternatively contend that: under authority of 36 P.S. §2731 et seq., they are entitled to the establishment of a private road giving them access from their proposed subdivision to a public road (North Wales Road); and that SEPTA has effected a de facto condemnation of their land, requiring the appointment of a jury of view to determine fair compensation.

Trial on plaintiffs' action for declaratory judgment was held before the undersigned, sitting as chancellor, on July 26, 1993, and included a view of the property in question.

ISSUES

(1) Whether plaintiffs are entitled to a relocation, upgrade, and expansion of their existing crossing across SEPTA's railroad right-of-way in order to facilitate a proposed residential subdivision on the rear portion of plaintiffs' property, with SEPTA responsible for the cost of the crossing.

(2) Whether plaintiffs are entitled, under 36 P.S. §2731, to appointment of a jury of view pursuant to their contention that they are entitled to a private road giving them access from their proposed subdivision to a public road.

(3) Whether plaintiffs have established that the actions of SEPTA constitute a de facto taking entitling plaintiffs to appointment of a jury of view to determine fair compensation.

FINDINGS OF FACT

The parties have stipulated to the following findings of fact:

(1) Plaintiffs, Herbert and Evelyn Peck ("Pecks") are entireties owners of premises fronting on and known as 1620 North Wales Road, Whitpain Township, Montgomery County, Pennsylvania consisting of a tract of 8.093 acres ("premises").

(2) Pecks became owners by indenture dated August 15, 1972 and recorded in the Montgomery County Recorder of Deeds Office in deed book 3779, page 206. A copy of the indenture is admitted as exhibit P-1.

(3) The premises is bisected by a single track rail line commonly known as the "Stony Creek Branch" which runs between Norristown and Lansdale, as a result of which approximately six acres in the rear of

the premises presently have no direct access to a public road.

(4) The configuration of the premises and the location of the rail line is shown on the location map admitted as exhibit P-3.

(5) Defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA") is the current owner of the Stony Creek Branch which was originally laid out and constructed in or about 1874 by the Stony Creek Rail Road Company.

(6) The right-of-way for the Stony Creek Branch was acquired across the premises from Pecks' predecessors in title, Enos Cassel and Elizabeth, his wife, by indenture dated February 24, 1874 ("indenture") and recorded in the Montgomery County Recorder of Deeds Office in deed book 215, page 191. A copy of the indenture is admitted as exhibit P-2.

(7) The indenture reserved unto the Cassels a right-of-way across the rail line as follows:

"Excepting and reserving nevertheless out of this present grant unto the said Enos Cassel, his heirs and assigns, a right-of-way across the roadway of said rail road for the purposes of a cattle guard, said cattle guard to be made at the expense of the said Stony Creek Rail Road Company, sufficiently guarded and planked and to be erected at such point as the said Enos Cassel may direct."

(8) A cattle guard is defined in *Black's Law Dictionary* 4th Ed. to be:

"A device to prevent cattle from straying along a railroad-track at a highway-crossing."

Funk and Wagnall's New Standard Dictionary describes it as:

"a ditch at a railway crossing, open or so covered with bars as to prevent cattle from passing along the track."

It is generally viewed as an appliance which will prevent animals from going either upon the tracks or the land of others adjoining the railroad right-of-way.

(9) At the time Pecks purchased the premises, the reserved right-of-way across the roadway of the railroad was located approximately as shown on exhibit P-3 and has been used continuously by Pecks for access and crossing between the divided portions of the premises.

(10) There is no other access to the rear portion of the premises, as the lands are surrounded by privately owned lands of others, the rail line, a stream and a gas pipeline.

(11) Pecks have utilized the six acre rear portion of their tract for farming, husbandry and recreational purposes, including motor vehicle uses.

(12) The surrounding area is substantially developed for residential uses and the premises are zoned R-2 under the Whitpain Township Zoning Ordinance which provides for single family residences on 12,500 square foot parcels.

(13) In or about 1987, Pecks requested SEPTA to widen and pave a private road across the railroad right-of-way to align with a private road for motor vehicle traffic through to North Wales Road, which would facilitate the construction of single family residences anticipated to be eventually developed on Pecks' property when subdivided.

(14) The driveway proposed by Pecks would connect the rear portion of the premises to that portion fronting on North Wales Road which is a public road.

(15) At that time, SEPTA responded that if it was to permit such a private road crossing, Pecks would have to, at minimum, (1) install a Nelson rail chair crossing; and (2) install electronic signalization/gates within one year after resumption of rail service with estimated costs in 1992 of $30,000 and $120,000 respectively. SEPTA also expressed a concern over responsibility over future maintenance of such a new paved crossing.

(16) SEPTA suggested to Pecks that they seek public road access through alternative means. Pecks represented there were no other accessways at that time.

(17) Pecks agreed to the installation of the specialized crossing, gates and signalization at SEPTA's sole cost and expense.

(18) SEPTA currently has a policy of discouraging expanded use of private crossings such as the crossing at issue in this case.

(19) In the course of rehabilitating the track and track bed for freight railroad service by Conrail, SEPTA permitted PennDOT (Bureau of Rail Freight Ports and Waterways) to perform such work that now effectively prohibits any crossing of vehicular traffic at Pecks' right-of-way. SEPTA warrants that the right-of-way across the railroad line is to be restored.[*]

(20) Since their purchase of the premises, Pecks have used the reserved right-of-way via crossing for pedestrian, animal and motor vehicle access to the rear portion of their property without objection thereto by SEPTA.

(21) Without access to a public road for vehicular use and other contemporary use and facilities, the rear part of the premises cannot be used for residential purposes.

---

[*] This restoration has since been accomplished.

(22) Relocation of the right-of-way across the rail line to another part of the rail line bisecting the property will have no different effect on safety or rail line operations and is consistent with the language of the reservation which allows the landowner to select the crossing location.

## DISCUSSION

Plaintiffs' contention that the Railroad Act of 1849, 15 P.S. §4101, compels SEPTA to relocate, expand, and upgrade the existing private crossing does not find support in the law. Although the court in *Estate of Spickler v. Board of Commissioners,* 395 Pa. Super. 542, 577 A.2d 923 (1990) held that the Act created a vested, devisable right in a property owner to an easement across a railroad dividing that owner's tract of land, plaintiffs here are asserting a right to much more than section 4101 grants them. The Act provides, in pertinent part, that:

"...for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross and pass over the same, with wagons, carts and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company...."

The purpose of the Act has been held to provide owners of farms divided by railroads with a convenient mode of access from one part of the farm to the other. *Dubbs v. Phila. & Reading R.R. Co.,* 148 Pa. 66, 69, 23 A. 883, 885 (1892). In *Port v. Huntingdon & Broad*

*Top R.R.,* 168 Pa. 19, 21, 31 A. 950, 951 (1895), the court indicated that the purpose of the "causeway" referenced by the Act was to serve as an *internal* improvement to facilitate travel from one part of the land to the other.

Plaintiffs contend that their right to a crossing over the railroad right-of-way is not limited to the agricultural purposes such a crossing might have served in 1849, but is an evolving right, adaptable to changing technologies and usages, and there is indeed authority to support plaintiffs' position that a crossing under the Act is not limited to agricultural usage. See *Hespenheide v. King,* 30 Pitts. Leg. J. 171 (1899) and *Quigg v. Commonwealth,* 61 Montg. Co. L. Rep. 189, 192, 54 D.&C. 141, 144 (Knight, P.J. 1945), where the court stated: "...we have seen no case which holds that the act applies only to farm lands."

The manifest purpose of the Act, however, is clearly to prevent an owner of land from being deprived by a railroad of the use of his entire, unified property. Plaintiffs here do not seek a relocated, upgraded, and expanded crossing in order that they might use their entire property as a unified whole, rather, they seek a means to profitably *divide* their land. This court sees nothing in the Act which would require SEPTA to provide such an expanded, qualitatively different use for plaintiffs' crossing. We see nothing in the Act which would require SEPTA to bear the expense of the safety improvements such an expansion and increased usage would clearly require. This court is satisfied that the existing crossing is fully adequate to serve the needs of the property as a unified whole. As the court noted in *Ferguson's Petition,* 238 Pa. 78, 82 (1913):

"The statute does not require a causeway to be built adequate for any and all purposes for which the owner

may desire to use his land.... all that is required is a causeway sufficient to admit of the divided parts of the tract being used for agricultural purposes by the occupant, as a whole."

The purposes of the Act are thus met, and plaintiffs are entitled to no more.

The cases cited by plaintiffs are readily distinguishable. In *Sonnen v. Reading Co.,* 43 D.&C. 2d 737 (1967) the court simply indicated that once a railroad has created a private crossing pursuant to the Act, the railroad may not allow the crossing to fall into disrepair merely because another access has subsequently become available.

In *Delaware, Lack. & West. Rwy. v. Shuman,* 9 D.&C. 2d 303 (C.P. Columbia County, Kreisher, P.J., 1956), reversed on other grounds, 382 Pa. 452, 115 A.2d 161 (1955), the court recognized a gas station owner's right to use a private crossing to transport petroleum products across a railroad line. The court, however, enjoined the owner, citing safety concerns, from permitting use of the private crossing by its gas station customers. Although the court held that it was the *railroad's* responsibility to erect barricades sufficient to close the crossing to the public but permit the owner's continued usage, *Shuman* involved a *current* use of a *unified* property, with the barricades intended not as an expansion of that use, but as a means of allowing that use to continue by the owner while also providing for the safety of the public. Again, in the instant case, plaintiffs are seeking an upgraded crossing sufficient to *change* the property's current use and to *terminate* the property's existence as a unified property. We simply see nothing in the Act requiring SEPTA to agree to such an upgrade while bearing the burden of paying for the safety devices it would require.

This court also finds nothing in the 1874 indenture entitling plaintiffs to the relief they now seek. It is well-settled that in interpreting instruments of conveyance, the primary object is to ascertain and effectuate the intent of the parties. *Quarry Office v. PECO,* 394 Pa. Super. 426, 576 A.2d 358 (1990). See also, *Lawson v. Simonsen,* 490 Pa. 509, 417 A.2d 155 (1980) and *Brookbank v. Benedum-Trees Oil Co.,* 389 Pa. 151, 131 A.2d 103 (1957).

This court believes that it would require quite an expansive interpretation to read the language of the 1874 indenture as granting to plaintiffs the right to an upgraded crossing to serve a proposed five lot subdivision. The indenture in question reserves to plaintiffs' predecessor in title a right-of-way for a cattle guard across the railway. Although this language is somewhat ambiguous in that a cattle guard is traditionally viewed as a device running *alongside* a railway crossing, preventing animals from wandering along the track, the existence of a cattle guard would logically seem to presume the existence of a crossing *across* the tracks to unite the bisected property. In the instant case, plaintiffs retain precisely such a crossing; the existing crossing allows plaintiffs to enjoy their property as a unified whole. This court is unable to interpret the language of the indenture, which speaks of a cattle guard along a railway bisecting what was originally farmland, as granting plaintiffs the right to an upgraded paved road facilitating their proposed residential subdivision.

Plaintiffs' final contentions are similarly without merit. Plaintiffs have established no right to appointment of a jury of view under 36 P.S. §2731. Plaintiffs are not contending that their property is currently landlocked or that existing roads are unfit for the present use of the land. Rather, plaintiffs contend that their *proposed*

subdivision *would* be landlocked without creation of a private road. This is clearly insufficient to entitle plaintiffs to appointment of a board of viewers. See *e.g., In re Pine Road,* 9 D.&C. 4th 431 (C.P. Montg. Co., Salus, J., 1990). Plaintiffs have simply presented an insufficient factual basis to entitle them to appointment of a board of view under section 2731.

Similarly, plaintiffs have in no way established that SEPTA effected a de facto condemnation of their lands. Plaintiffs have clearly not been substantially deprived of the enjoyment of their property. The court heard no evidence to the effect that plaintiffs' use of their land is currently significantly impaired by SEPTA. The fact that SEPTA refuses to assist in transforming plaintiffs' property into something other than it now constitutes does not prove a de facto taking. See *e.g., PennDOT v. Steppler, 114 Pa. Commw. 300, 542 A.2d 175 (1988).*

### CONCLUSIONS OF LAW

(1) Plaintiffs are the successors in interest to the rights of Enos and Elizabeth Cassel, and defendant SEPTA is the successor in interest to the rights of the Stony Creek Rail Road Company, with respect to the indenture of February 24, 1874.

(2) Neither the indenture of 1874, nor the Railroad Act of 1849, 15 P.S. §4101, vests in plaintiffs any right to an expanded and upgraded crossing across the SEPTA railway in order to facilitate a proposed residential development and subdivision of the rear portion of plaintiffs' property with SEPTA to be responsible for the costs associated with the upgraded crossing.

(3) The railroad crossing in existence on the property is fully sufficient to provide for the current use of the property.

(4) Plaintiffs have failed to present a factual basis sufficient to entitle them to appointment of a board of view under 36 P.S. §2731.

(5) Plaintiffs have failed to demonstrate that SEPTA has significantly deprived them of the use and enjoyment of their property such as would constitute a de facto condemnation requiring appointment of a board of view to determine just compensation.

## DECREE NISI

And now, October 25, 1993, it is hereby ordered, adjudged, and decreed that plaintiffs' prayer for declaratory relief is denied.

Pursuant to Pa.R.C.P. 227.4, if no motion for post-trial relief is filed within 10 days from the filing of this adjudication and decree nisi, this decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree of the court.